## GASTON v. BENNETT.

1. The testimony being conflicting, and the referee and Circuit Judge having differed in their findings of fact, this court examined the testimony carefully and approved the conclusions reached by the referee.
2. A person possessed of sufficient mental capacity to make a contract, but of such weak intellect as to render him liable to imposition, made

a deed of all his land to his uncle, on an inadequate consideration, who, taking advantage of his nephew's condition, obtained the deed by imposing upon the nephew by exciting his fears in reference to a pretensive claim, asserted for this purpose. *Held,* that the deed should be set aside on the ground of undue influence, the defendant being allowed compensation for permanent improvements and expenditures, and required to account for rents.

3. The same result would follow if the contract had been advantageous to plaintiff; but the consideration being the future support of plaintiff by defendant, it could not be called advantageous to plaintiff, as defendant gave no security for such support.

Before PRESSLEY, J., Spartanburg, July, 1887.

Action by Thomas J. Gaston against H. Ashmore Bennett. J. K. Jennings, Esq., referee, reported as follows :

Having been appointed referee by order of this court, to hear and determine the issues in this action, and having had such reference, I submit the following report.

On April 29, 1885, the plaintiff executed and delivered to the defendant a deed of conveyance for the tract of land described in the complaint, containing two hundred and seventy acres, more or less, the consideration being five dollars, natural love and affection, and a proper support and maintenance for plaintiff for life. This action is instituted to set aside this deed on the ground of undue influence, &c., on the part of the defendant, and on account of mental weakness and incapacity to contract on the part of the plaintiff. The answer alleges that the defendant had an interest in said land under the will of Samuel Gaston, deceased, the father of the plaintiff and grandfather of the defendant, and that this also was part of the consideration and inducement which led to the execution of the deed.

Under the will of Samuel Gaston, the plaintiff received this tract of land after the death of his mother, valued at $1,700, and the mother of the defendant, the only other child of Samuel Gaston, received property to the amount of $612, and the will provides that they be made equal on final settlement of the estate. The defendant is the only child of his mother, and the land in dispute is the only property out of which he could have been made equal with the plaintiff under the will of Samuel Gaston.

A. P. Wakefield, the executor of Samuel Gaston, provides in his will that the defendant shall receive an amount from his estate sufficient to make him equal with that received by plaintiff under the will of Samuel Gaston. This amount has been paid to the defendant by the executrix of A. P. Wakefield. Under these circumstances we do not think that the defendant could have disturbed the title and possession of plaintiff to the lands in dispute.

The principal questions involved in the case, then, are: Did the plaintiff have mental capacity to make the deed, and if not, did the defendant take advantage of his relationship and superior knowledge to induce him to make the deed by undue influence, persuasion, or overreaching ? And was the consideration adequate ? The testimony is full on these points and very conflicting. There can be no doubt that at the time of the execution of the deed, the nature of the transaction was fairly, freely, and fully explained to the plaintiff, and that he unhesitatingly consented to the same. He was satisfied at the time and apparently understood what he was doing. Some of the witnesses say they think he understood it, while others say he did not have capacity to do so ; and while they are pretty equally divided on this point, I am satisfied from the examination of plaintiff and his conduct on the stand, that he did not understand it, and that his mental capacity was not sufficient to take in the nature of the transaction.

It was a bargain that no ordinary man in the full possession of his faculties would have made, and one that no man who was fully acquainted with his circumstances and his mental capacity ought to have accepted at his hands. The defendant and a few of his friends and relatives seem to have been extremely anxious to consummate the bargain. Undue advantage was unquestionably taken of the plaintiff's ignorance and extreme mental weakness by the defendant, who, with his full knowledge of the plaintiff's circumstances and mental capacity, should have used his superior knowledge for the benefit and protection of his uncle's property, rather than to have induced him to transfer to himself, by such a bargain, all the land he possessed. It seems to me that the mental weakness of the plaintiff was of such a character as to be easily taken advantage of by the defendant without any apparent violation of honesty and fair dealing, and it was of that

degree of weakness that ought to have been notice to the defendant, who was familiar with him, that he did not have sufficient capacity to enter into such a bargain and sale of his land. The price paid or agreed to be paid was inadequate, although it was not grossly inadequate.

I find as conclusions of fact: I. That the price was inadequate. II. That the value of the land is three thousand dollars. III. That the defendant has expended a certain amount in permanent improvements on the place.

I find as conclusions of law: I. That the defendant should be required to surrender the possession of the place to the plaintiff and deliver up his deed for cancellation. II. That the land should be charged with the amount of money expended by the defendant in permanent improvements, after deducting therefrom the value of the rents, less the amount paid to the plaintiff.

The cause came up before the Circuit Judge on exceptions by defendant, when the following decree was filed:

In this action plaintiff seeks to set aside a conveyance of land made by him to defendant on April 29, 1885. Complaint alleges plaintiff's incapacity to make a deed, and also that he acted in that matter under undue influence. The referee finds for the plaintiff on both allegations, and also that the consideration was inadequate, though not grossly so.

I do not concur in any one of these findings of the referee, but regard the preponderance of the testimony vastly on the side of defendant. The land was bequeathed to plaintiff by his father, Samuel Gaston. It is a tract of 270 acres, valued in said will at $1,700. It is fair to assume that if testator had regarded plaintiff as incapable of managing his own business, a trustee for him would have been provided by the will, and that was not done. After the death of Samuel Gaston, plaintiff lived with his mother on said land, and, as she was old and feeble, he managed the business for her. After his mother died he managed his own business—rented land and collected the rents, bought his own supplies and paid for them, and all who had any business transaction with him, who testify in this case, say that he was "a close buyer"—shrewd in his bargains, and not easily cheated. No one

of plaintiff's witnesses testify to their ever having had any business transactions with him. They express the opinion that he had not capacity to make a deed, but they state no fact whatever of any business transaction by him within their knowledge whereby incapacity was manifested. None of these witnesses are experts in the matter of mental capacity, and the three physicians who testify on this point, claim to know plaintiff well, and say that he had capacity to make a deed, and understood what he was doing, though some of them regarded him as weak-minded. My finding of fact, therefore, is that plaintiff was not incapable to make said deed.

On the matter of undue influence, plaintiff is the only witness who testifies to that, and he is positively contradicted by all the witnesses who profess to know anything about it. Mr. Carlisle drew the deed, and as attorney for both parties, was present when the deed was executed, carefully reading it aloud to plaintiff and all the others, amongst whom was the judge of probate. Plaintiff went alone to Spartanburg to have the deed executed. He had gone once before, but the judge of probate was absent, and the parties desired his presence. Defendant testified that the proposal for said deed was not made by him to plaintiff, but the reverse. After it was made, plaintiff married a wife, and before and up to the time of his marriage, as testified by several witnesses, he spoke of the making of said deed and its terms, and said he was satisfied with it.. No witness except himself has testified that he was dissatisfied at any time before his marriage. My finding is that said deed was not made under any undue influence.

The consideration for said conveyance is that defendant support the plaintiff during remainder of his life. He was over 40 years old. Defendant is his nephew. Plaintiff had manifested no inclination at that time to marry, and so have lineal heirs. He might well prefer, so situated, to have a home with his nephew and cease from care and labor. The father had valued said land at $1,700. The testimony in this case leads me to the conclusion that though said land was in very bad condition when the deed was made, it was worth about $3,000. But it did not produce rents equal to a fair interest and taxes on that value. The average rent for 4 to 5 years up to date of the deed was not $100 a

year. The value of maintaining plaintiff is variously estimated at $150 to $200 a year. Some witnesses place it much higher. Those who say $12 per month do not include such additional expense as may arise from fevers or other sickness, nor do they allow for additional needs in the advance of old age. At present the plaintiff is a hale, hearty man, with the promise of long life. Under all the circumstances, my finding is that the consideration for this deed is more than the great majority of prudent men would give for the tract of land in question, unless inclined thereto by affection or kind feeling towards plaintiff.

It is ordered and adjudged, that the report of the referee be overruled, and that the said deed be established as good and valid.

The plaintiff appealed from this decree on the grounds that his honor erred: I. In overruling the referee and in finding that the plaintiff had sufficient mental capacity to make the deed. II. In overruling the referee and finding that the plaintiff did not act under undue influence in executing said conveyance, and in not finding that he was further induced to make said deed, by being made to believe by defendant that defendant had an interest in the land. III. In overruling the referee and finding that the consideration for the deed was adequate. IV. In overruling the report of the referee and adjudging that the deed be established as good and legal.

Messrs. *Bomar & Simpson* and *A. B. Calvert*, for appellant.

Messrs. *Thomson, Nicholls & Moore*, and *Carlisle & Hydrick*, contra.

March 27, 1889. The opinion of the court was delivered by

MR. JUSTICE MCIVER. The action in this case was brought to set aside a deed for a tract of land executed by the plaintiff to the defendant, upon the ground that the plaintiff being weak-minded and thus liable to imposition, was in fact imposed upon by the defendant and thus induced to execute the deed. The case does not rest upon the ground that the plaintiff was *non compos mentis*—absolutely incapable of making a contract—but

it is rather based upon the ground that the plaintiff was a person of such weak understanding as to be easily imposed upon, and that defendant, taking advantage of his condition, induced him to make the deed in question without adequate consideration. It was not necessary, therefore, for the plaintiff to show that he was mentally incapable of making a contract. As is said in 1 *Story Eq. Jur.,* section 238, quoted with approval in *Banker* v. *Hendricks,* 24 S. C., 13 : "The doctrine, therefore, may be laid down as generally true, that the acts and contracts of persons who are of weak understanding, and who are thereby liable to imposition, will be held void in Courts of Equity, if the nature of the act or contract justify the conclusion that the party has not exercised a deliberate judgment, but that he has been imposed upon, circumvented, or overcome by cunning, artifice, or undue influence." This being, in our judgment, the legal principle by which the plaintiff's case must be tested, we will proceed to consider the case under the light of such principle.

The issues in the action were referred to a referee for trial, whose report will be found in the "Case." From this report it appears that the consideration stated in the deed was "five dollars, natural love and affection, and a proper support and maintenance for plaintiff for life," though the defendant in his answer alleges that he had a claim on, or interest in, the tract of land, under the will of Samuel Gaston, and the surrender of this claim was a part of the consideration and inducement for the execution of the deed. The referee found, in effect, that the plaintiff was a person of such weak understanding that he could be easily imposed upon, and that defendant, taking advantage of such weakness, induced the plaintiff to execute the deed for an inadequate, though not grossly inadequate, consideration, the land in his judgment being worth three thousand dollars, and he recommended that the deed be set aside and possession of the land restored to the plaintiff, in whose hands it should be liable to defendant for the amount of money expended by him in permanent improvements on the land, after deducting therefrom the value of the rents, less any amounts paid to plaintiff. Indeed, the referee seems to have been of opinion that the plaintiff did not have suf-

ficient mental capacity "to enter into such a bargain and sale of his land."

The case was heard by Judge Pressley upon this report, accompanied by all the testimony, with the exceptions filed thereto by the defendant. His honor disagreed with the referee and, on the contrary, found that the plaintiff had sufficient capacity to make the deed; that it was not obtained by any undue influence, and, on the contrary, was a good arrangement for the plaintiff. He therefore rendered judgment that the report of the referee be overruled and the deed be established as a good and valid conveyance. From this judgment the plaintiff appeals upon the several grounds set out in the record.

Inasmuch as there is a direct conflict between the referee and the Circuit Judge as to the facts, we find it necessary to examine carefully the testimony which is all set out in the "Case." The result of this examination constrains us to say that we cannot concur in the conclusions reached by the Circuit Judge. While there is a conflict of testimony as to whether the plaintiff had sufficient mental capacity to execute the deed in question, there seems to be no conflict as to the fact that he was a person of weak mind, though the witnesses differ as to the extent of that weakness. Setting out with that fact as established, it seems to us that the real inquiry in the case is, not, as both referee and Circuit Judge seem to have supposed, whether the plaintiff had sufficient mental capacity to make a contract, but whether the defendant, taking advantage of the acknowledged weakness of mind of the plaintiff, by undue influence induced him to execute the deed. We do not, for a moment, suppose that any such influence was used at the time the deed was signed in the office of the judge of probate. The character of the witnesses then present, some of whom are known to the conrt, is such as to forbid such an imputation. But if any improper influences were used, the natural inference would be that the defendant would not venture, in the presence of such witnesses, to resort to any improper means, but would have brought such agencies to bear beforehand upon what little mind the plaintiff had.

A careful study of the evidence has impressed us with the conviction that the defendant had impressed the plaintiff with the

belief that, if he did not execute the deed, he would prosecute his claim against the land under the will of Samuel Gaston, and the whole property might be lost by the expenses of litigation. This appears not only from the testimony of the plaintiff, but the defendant in his answer, as well as in his testimony, says that the relinquishment of this claim constituted a part of the consideration of the deed; and yet, singular to say, no such consideration is mentioned in the deed. Why? The defendant knew that this claim had been previously settled, for we find in the "Case" a copy of a receipt signed by defendant, bearing date April 20, 1885, nine days before the deed was executed, whereby the defendant acknowledged the receipt from Elizabeth A. Gaston, executrix of A. P. Wakefield, of one thousand and fifty-eight dollars, "in full of amount to equalize me with Thomas J. Gaston, under the will of Samuel Gaston, in a final settlement, as provided in the will of her testator," and J. D. Leonard, who was one of the subscribing witnesses to the deed, was a subscribing witness to said receipt. It looks very much as if the release of this claim, which manifestly constituted a material, if not the main, consideration, was omitted from the deed, because one of the subscribing witnesses, J. D. Leonard, who is represented to be a person of good character, knew, from having signed the receipt as a witness, that the defendant had already received full satisfaction therefor.

Inasmuch, however, as Leonard, in his testimony, says: "The papers were all signed at same time—receipts on settlement and deed"—it may be possible that there is a clerical error in the date of the receipt above referred to (though, of course, we cannot undertake to decide cases, except upon the papers as presented to us), we will assume, for the sake of argument, that such was the fact. Even then we do not understand why that which we have no doubt was the main consideration which induced the plaintiff to sign the deed, should have been omitted. But in addition to this it seems to us that the claim was wholly unfounded, and the defendant must have known it to be so; and we can well understand how such a claim could have been used to excite the fears of a weak-minded person to such an extent as to induce him to do that which he otherwise would not have done.

The facts upon which the claim rests are as follows: Samuel Gaston died, leaving a widow and two children—the plaintiff and the mother of defendant. By his will he gave his whole property to his wife for life, or during her widowhood, and after her death or marriage, the land in question was given to the plaintiff at a valuation of seventeen hundred dollars, and certain other property, valued at six hundred and twelve dollars, was given to defendant's mother. The will directed that upon a final settlement of the estate the two children should be made equal. Upon the death of defendant's mother, he, being her sole heir, became entitled to her interest under the will of Samuel Gaston, and, as such, became entitled to receive from the estate of Samuel Gaston an amount sufficient to make up to him the difference between the value of the property devised to plaintiff—seventeen hundred dollars, and the value of the property given to his mother, six hundred and twelve dollars. But it appears that A. P. Wakefield, who was executor of the will of Samuel Gaston, provided by his will that the defendant should be paid out of his estate a sum sufficient to make him equal with plaintiff. Now, as it was the duty of Wakefield, as executor of Samuel Gaston, to make provision for the equalization required by the will of his testator, and as he did so by his will, we do not see what shadow of claim the defendant could have upon the land devised to plaintiff, at least until the provision made by the executor had proved insufficient for the purpose. But this, so far from being the case, as the event has shown, the provision made by the executor has, in fact, proved sufficient, and has been accepted.

We think that the defendant must have known, and his conduct shows that he did know, that this was a groundless claim. It does not appear that any steps were taken to enforce this claim, or even any mention made of it until about the time this deed was obtained from the plaintiff. It is true that the defendant does say in his answer, "That for some time previous to the date of the deed  *  *  *  the defendant had tried to induce the plaintiff and the executors of said will to pay to him the amount necessary to equalize them in the legacies and devises under the will, which they refused to do;" but when he goes on the stand to testify, where he would be subjected to the ordeal of a cross-

examination, he says nothing of the kind. On the contrary, what he then says would rather leave the impression that nothing had been said about this claim, until the plaintiff, shortly before the deed was executed, came to him, as he says, and asked if he "would not take care of him and take charge of the place, and I told him I would if he would make me safe in the trade," and even then this claim was not mentioned, for he says : "Nothing said then further in reference to trade. Afterwards he agreed to make deed to me. This deed was in settlement of money coming to me from Samuel Gaston's estate and from plaintiff." Now, if either defendant or his mother ever had any claim on the land devised to plaintiff, it would have arisen upon the death of the life-tenant, the widow of Samuel Gaston. When she died is left in some doubt by the testimony. One of the witnesses, Thomas P. Gaston, says she died "in the fall of 1864 or spring of 1865," while another witness, T. J. Wakefield, says she died in 1885. All the circumstances show that this latter date could not have been the correct date, and may possibly be a misprint. If the old lady died in the spring of 1865, then the claim, if it ever existed, would have been presumed paid by lapse of time, as the deed was executed on April 29, 1885.

But in this confusion of dates we are unwilling to rest our decision upon this ground. The defendant in his testimony also says : "Mr. Anthony Wakefield provided that I should be made equal with plaintiff in his will. It would take over $1,000 to make me equal with plaintiff. I got a note for $1,058 to make me equal with plaintiff. I thought I was to get half of the real estate also to make me equal with plaintiff." The absurdity of this statement, so patent upon the face of it, shows that defendant knew that this pretensive claim, which he used as a means of extorting from the fears of this weak-minded person a deed for every foot of land which he possessed, was totally groundless. According to that statement he would receive not only the $612 worth of property under the will of his grandfather, but in addition thereto the $1,058 from the estate of the executor, Wakefield, which he chose to accept in the note of a third person, a part of which he says has been paid, and also "half of the real estate"—at least $850, amounting in all to $2,520, while the

plaintiff would only receive $850. Such a mode of equalization, however much it might commend itself to a person capable of taking advantage of a weak-minded relative, can scarcely receive the sanction of a Court of Equity.

Both the referee and the Circuit Judge seem to have proceeded upon the theory that in order to maintain this action it was necessary to show that the plaintiff was incompetent mentally to make this deed. But, as we have said above, this is not essential, and we do not rest our decision upon that ground. On the contrary, we do not think that the testimony was sufficient to show that the plaintiff was not possessed of sufficient mental capacity to make a contract, but we think it does show that the plaintiff was a person of such weak intellect as to render him liable to imposition, and that the defendant, taking advantage of his condition, did impose upon him by exciting his fears in reference to a pretensive claim, known to be groundless, set up by defendant for the purpose of inducing him to do that which he otherwise would not have done. Upon this ground we think the deed should be set aside, allowing the defendant just compensation for such permanent improvements as he may have put upon the land, after deducting therefrom the value of the rents, less any amount paid to or advanced for plaintiff by the defendant.

It is urged, however, that the trade was a good arrangement for the plaintiff, and there is not only much testimony to support that conclusion, but it has also been adopted by the Circuit Judge. But even if this be so, we do not understand that it would be sufficient to support the transaction. A person cannot be compelled to dispose of his property even upon advantageous terms, nor can he be induced to do so by the use of such means as a Court of Equity would condemn. We must say, however, that we cannot agree that this was an advantageous trade for the plaintiff. Conceding that the testimony shows that the annual income from the property, in the condition in which it was at the time the deed was executed, was but little, if anything, more than would be sufficient to support the plaintiff, yet no security whatever was provided for the performance of the covenant for such support. The defendant might, in a very short time, through improvidence or misfortune, become totally unable to

provide for the maintenance of the plaintiff; and it seems to us, justice and fair dealing required that some security should have been given; and the fact that it was not done is another evidence that the defendant was looking alone to his own interest, regardless of the welfare of his weak-minded relative. In this respect the case is much stronger than the case of *Banker* v. *Hendricks, supra*, for there the covenant for support was secured by a mortgage on the property conveyed.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that Court for the purpose of carrying out the views herein announced.

MR. JUSTICE MCGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON. Under the ruling in *Banker* v. *Hendricks*, 24 S. C., 13, I concur.