16076

LYON v. BARGIOL *et al.*

(47 S. E. (2d) 625)

*Mr. W. Harper Welborn,* of Anderson, for Appellants,

*Messrs. Francis R. Fant* and *O. H. Doyle,* of Anderson, for Respondent,

May 6, 1948.

STUKES, Justice:

This appeal is from a decree in equity of the Court of Common Pleas for Anderson County whereby two deeds of real estate by the then seventy-five year old plantiff to her grandson who is about twenty years old and who is the appellant Joseph William Bargiol, were set aside, and the title to the land restored to .the aged plaintiff. The action was commenced November 27, 1946.

The first of these deeds was executed July 20, 1945, and the second on February 12, 1946; their difference is in the recited consideration. The first stated $5.00 alone, and the second added "love and affection" and recited that it was in confirmation of the first. Both contained reservations of a life estate to the grantor only as the result of the insistence of the successive draftsmen-lawyers. They constituted conveyances in remainder of all of respondent's land, one hundred and fifty-two acres, which was devised to her by her deceased husband who was a large landowner and his will also provided a tract of land of substantial acreage for each of his numerous children. Respondent is illiterate; she cannot read or write; and the evidence established that she was far from able to manage her property in a businesslike manner. The evidence likewise established that she was not acting at arms' length or with independent legal advice in the transactions under investigation.

The testimony was taken before the Probate Judge who was appointed as Special Referee to report the evidence and his conclusions of fact and law. His report is comprehensive and contains a thorough analysis of the evidence from which

he concluded that respondent did not understand the nature of a deed when she executed the conveyances under attack; that she made them under the constant pressure of undue influence and duress, exerted upon her by the appellants, Joseph Bargiol and Mamie Bargiol, who were the parents of the minor grantee, which influence included the element of false representation by which fear was aroused in the grantor; and that the grantee was cognizant of the false representation, the undue influence and duress which were employed by his parents in his behalf and in which he acquiesced and knowingly intended to profit thereby.

The factual summary by the referee which is included in his report is here quoted, as follows:

"The overall picture is that this plaintiff who was 75 years of age at the time the deeds in question were made, wholly illiterate, not able to read a word or to sign her name, unacquainted with any sort of business, nervous, excitable, having had since she was under 17 years of age a man of energy and dominant traits to look after everything except household duties, suddenly finds herself, at the death of her husband, helpless and alone and possessed of at least six thousand ($6,000.00) Dollars in cash and lands estimated by the witnesses to be worth from twelve to fifteen thousand ($12,000.00 to $15,000.00) Dollars. She bought a Packard automobile, farming implements, tools, etc. She lived contentedly with her daughter, Bessie, for nearly two years and with profit to both of them. She visited her daughter, Mamie Bargiol, and something happened which caused her to leave her home and live with the Bargiols. This was some time in the late Spring or Summer of 1945. In less than six months she had no money, no automobile, no share of the crops made on her place, no tractor, and no farming implements. She had made two wills in which Joseph William Bargiol was a beneficiary and had executed two deeds in favor of him and had nothing left except a life estate in her lands and this little was saved to her because Mr. Banister ignored his

instructions and included the reservation of the life estate in the first deed. Mr. Pruitt, the lawyer who knew most about her, absolutely refused to draw a deed for her. Mr. Banister, who knew nothing about her at all, and who represented the Bargiols, didn't like the looks of things and told her to go home and think it over and when she did come back, arbitrarily or 'on his own motion' as he puts it, kept her from parting with the entire estate. Mr. Earle, who likewise knew nothing about her, told her to think it over further before she made a confirmation deed, although as the lawyer engaged to defend the title in Joseph William Bargiol, it was highly desirable that she execute a confirmation deed.

"All of the time she was at the Bargiol home, she was under constant pressure from them to deed her lands to their son. Mrs. Mamie Bargiol is a young woman of dominating appearance and character, intelligent, and of some education. Joseph Bargiol, her husband, although he was charged in the complaint with being a part to a conspiracy to defraud Mrs. Lyon and with misrepresentations to her and with exerting undue influence and duress upon her, did not take the stand to deny anything. He was content to let his wife take the brunt of cross-examination. The witnesses, Mr. Pickens and Mr. Trotter, who have no personal interest in this suit, and are men of good repute in this county, testified that Joseph Bargiol had kept the McAlister family and the whole neighborhood where he lives in constant turmoil since he has been there and that he has the reputation of being utterly unscrupulous, that he will do anything to gain his ends and that the whole community believes that he will wind up with everything his mother-in-law has. The Bargiols do seem to have kept things stirred up. Joseph Bargiol had sued his father-in-law. He has sued the sister of Mr. Pickens. He took out a warrant for his sister-in-law, Mrs Stegall, and he attempted to get half of whatever Mrs. Lyon was entitled to as her dower interest in her husband's lands and consulted Mr. Banister about her rights, and his wife took a warrant for her brother-

in-law, Jesse McAlister. These things have nothing directly to do with the execution of the two deeds but they do show that the Bargiols are willful and contentious people and Mrs. Lyon, in dealing with them, was not on even terms with them. They had the opportunity and ability to influence her and to impose their will upon her and did do so by constant and unremitting pressure and by false and fraudulent misrepresentations. Mr. Pickens says that he does not believe that Mrs. Lyon knew what she was doing when she made any of her several wills or deeds and that, in his opinion, someone should be appointed to look after her. Mr. Trotter says he does not believe she understood what she was doing. I know these witnesses and I believe they were giving their honest opinions."

The conclusions of law of the referee are similarly clear. He cited as authority for his recommendations the following: 16 Am. Jur. 461 et seq., 26 C. J. S., Deeds, § 62, page 294, *Gaston v. Bennett,* 30 S. C. 467, 9 S. E. 515, *Wille v. Wille,* 57 S. C. 413, 35 S. E. 804, and *Page v. Lewis,* 209 S. C. 212, 39 S. E. (2d) 787.

The decree of the circuit court dated December 4, 1947, recites that after review of the evidence, in the light of the exceptions to the report of the referee, no other findings of fact or conclusions of law than those of the referee could have been reached; and comment was made that the referee observed the witnesses on the stand and, moreover, personally knew many of them, so was in good position to accurately evaluate their testimony. The report was confirmed and judgment rendered accordingly.

Death of former counsel for appellants has resulted in substituted counsel on appeal. His admirable brief has reduced the principal issues involved in the exceptions to two, which are stated as follows: "(1) Did the grantor (respondent) possess sufficient mental capacity to execute the deeds? And (2), was there any evidence to sustain the allegations of the deeds having been obtained through fraud, duress, and/or undue influence?"

It is seen that these issues relate only to the facts. In the face of the concurrent factual findings of the Referee and the Circuit Judge this Court will reverse only if they are without evidentiary support or if they are against the clear preponderance of the evidence. *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889. The cited case resulted in reversal of concurrent findings because they were against the clear preponderance of the evidence, but the general rule which has been stated and within which this controversy falls, was clearly set forth and substantiated by cited authority.

It would serve no useful purpose to review in detail the lengthy testimony. It has been carefully considered and we concur with the conclusions of the Referee and the Circuit Judge because the preponderance of the evidence supports the conclusions, which is more than that which requires affirmance. The case has many points of similarity with that of *Page v. Lewis, supra,* 209 S. C. 212, 39 S. E. (2d) 787, 801, which appears to be the last such decision of this Court. Reference may be had to the copious citation of authorities in that case. It is as was well said there by the eminent Judge Lide: "There are many other cases where deeds have been set aside, and the cases are likewise numerous where the Court has refused to set them aside, for it depends upon the facts and circumstances of the particular case."

Appellants argue the point that the referee erred, as did the Court in affirming him, in the holding that the deeds were void because at most they were voidable. Granting the correctness of the position, it is unavailing to appellants. The institution and prosecution of this action to judgment is an effective avoidance. The result is the same whether the deeds be considered void or voidable for any of the grounds which have been upheld. Thus the contention is unimportant and the point need not be further examined.

In view of the evidence that the second or confirmatory deed was made at least in part purpose to avoid responsibility for an expected money judgment in a pending action against the grantor, equity will not aid her in repudiation of the conveyance and so become party to the accomplishment of a fraudulent purpose, whereby appellants urge that the action must fail. *All v. Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 159 A. L. R. 981. It does appear at first blush that there is a collision of these principles of equity, to wit, that just mentioned and the principle upon which this action depends; but the answer is that under the facts as found, no purpose of the grantor is effected by the conveyance which equity sets aside in such a case as this. It is instead the will or purpose of the person or persons, who exercise the undue and unlawful influence, which is accomplished. The conveyance is the result of the intent of another rather than that of the grantor. Pertinent authorities are found in the footnotes to the text in 24 Am. Jur. 270, 271, Sec. 123, where it is said: "Where it appears that the transferrer and the transferee were not *in pari delicto,* a remedy may be accorded the one who was less guilty than the other. For example, the transferrer may be granted relief from the consequences of the transfer where the evidence shows that the transferee induced him to execute the conveyance by false representations" etc. Supporting decisions appear in the note in 1 L. R. A., N. S., 1012, 1013.

A somewhat similar distinction was made in *Page v. Lewis, supra,* 209 S. C. 212, 39 S. E. (2d) 787, and that decision and this should not be deemed to impinge upon the salutary principle invoked by appellants which is firmly established by long-standing precedents in this Court and others. See 24 Am. Jur. 270, *Bouton v. Beers,* 78 Conn. 414, 63 A. 619, 3 Ann. Cas. 942, and 16 S. E. Digest, Fraudulent Conveyances, Key 176, page 589.

The exceptions are overruled and the judgment affirmed.

FISHBURNE and OXNER, JJ., concur.

BAKER, C. J., and TAYLOR, J., concur in result.