16166

SAMUEL v. YOUNG *ET AL.*

(51 S. E. (2d) 367)

*Messrs. Williams & Henry,* of Greenville, *for Appellant,*

*Mr. W. W. Wilkins,* of Greenville, *for Respondents,*

*Messrs. Williams & Henry,* of Greenville, *for Appellant,* in reply,

January 6, 1949.

FISHBURNE, Justice.

This is a suit in equity for the specific performance of a parol agreement alleged to have been made in 1942 between the appellant, Orphelia Samuel, and her father, John Berry Oliver, who died testate in the year 1945. The contract, as the complaint alleges, was that the appellant and her father

mutually agreed that if appellant "would reside in said Oliver's home and look after him financially and personally, that he would will her the aforesaid premises in fee simple." The property referred to consists of eighty-four and one-half acres of land in Greenville County upon which John Berry Oliver resided.

John Berry Oliver died in 1945 at the age of eighty-seven years, leaving a will in which he devised the above tract of land, which he had farmed practically all of his adult life, in fee simple to his daughter, Gertrude Oliver Young. This will was duly admitted to probate. The defendant, Cornelia Young was appointed ancillary administratrix with the will annexed, and she together with her sister, Gertrude Oliver Young, were made parties defendant to this action. All of the parties are negroes.

The complaint alleges that appellant fully performed the contract on her part, and prays for specific performance. Respondents, in their answer, deny the making of the alleged oral contract and its performance by appellant, and plead the statute of frauds in bar of the action.

The case was referred to the master for Greenville County to take the evidence and pass upon the issues presented. He found that no contract was established whereby the appellant's father was legally obligated to devise the property to her in consideration of her services and assistance to him. Proof of this contract depends almost solely upon the testimony of Mr. J. A. Henry, appellant's attorney; and the master held that Mr. Henry's testimony was incompetent under Section 692 of the Code. Assuming, however, the existence of such a contract, the master went further and concluded as a matter of fact that appellant failed to perform her part of the alleged agreement, such performance being a condition precedent to the right of specific performance. Upon exceptions being taken to the county court, that court decreed that the testimony of Mr. Henry was competent and established the parol agreement which appellant

sought to prove, but confirmed the master's finding that appellant failed to discharge the duties and obligations imposed upon her by the contract she alleged, and was therefore not entitled to specific performance.

Appellant appeals from the judgment of the county court; and respondents by their additional grounds ask this court to reverse so much of the order of the county court as adjudges that the testimony of Mr. Henry is competent, and that the agreement to make a will was established.

We will deal first with the competency of the testimony of appellant's attorney, Mr. Henry. Our views bearing upon the propriety of an attorney's testifying in a case in which he is employed, are stated at some length in the case of *State v. Lee,* 203 S. C. 536, 28 S. E. (2d) 402, 403, 149 A. L. R. 1300, where it is said:

"From early years, it has been held in this State that it is of doubtful propriety in the trial of a case, where the conventional relation of attorney and client exists, for an attorney to testify for a client as to matters in issue. It was said in *Price v. Moses,* 10 Rich. Law, 454, 44 S. C. L. 454: 'The advocate and the witness should not be mixed up in the same case, and in all instances where it is known before the commencement of a suit that an attorney is to be a witness, he should decline the position of an advocate.' "

In the case of *State v. Lee, supra,* it was recognized that unlooked for situations may develop in a trial when it becomes indispensable for an attorney to testify. And in *Price v. Moses, supra,* it is stated: "But when this court is called on to exclude the attorney, it can only be on the score of interest, direct and immediate." Annotation, 13 Ann. Cas. 31; Wigmore on Evidence, Vol. 6., Sec. 1911, Page 595. *Reid v. Colcock,* 1 Nott & McC. 592, 9 Am. Dec. 729.

In the present case, the objection to the witness was not that he was incompetent by reason of being appellant's attorney and actually engaged in the trial of the case; but the

objection was based upon the ground that he was an interested witness coming within the bar of Section 692 of the Code. In his testimony, Mr. Henry stated that he would get a larger fee from his client should he succeed in winning the case; that all of the fee had not been paid, and that he did not know whether his client was financially able to pay it if the case should be lost.

The authorities generally hold that where the attorney's fee is fixed and certain, he has not a disqualifying interest. There is a division of authority whether an attorney has a disqualifying interest because he expects to charge a larger fee if successful. 28 R. C. L., Sec. 57, Page 469; Annotation, 49 L. R. A. (N. S.), Page 426. And see generally Annotation, 118 A. L. R. 954.

A decision of this question, however, is not necessary in the determination of this case, because we fully agree with the master and the judge of the county court that appellant is not entitled to specific performance, because she failed to perform her part of the alleged contract. Therefore, assuming without deciding the existence of the contract, we turn to the evidence to determine whether appellant lived up to the agreement she alleges—that is, that she would live with her father, reside in his house and look after him financially and personally.

The testimony shows that the father, John Berry Oliver, was married three times, and had children by each of his wives. The appellant and respondents, Gertrude Oliver Young and Cornelia Young, were children by his first wife. He resided for many years in the lower part of Greenville County on his farm, the property involved in this action. His last wife died in September, 1941, leaving him with two small sons by this marriage: Richard and Samuel. William Oliver, his oldest son, who at that time lived in New York, came down for the funeral. His father asked him if he and his wife would leave New York and return to the home place, live with him and farm the land. William agreed, if

his wife was willing, to do this, so that he and his father went to New York to see if this plan would be agreeable to William's wife. She agreed, and they left New York, came to Greenville County and moved into the home with the old man.

A few months thereafter, appellant, who was at that time working in a hotel in Baltimore, came to South Carolina of her own accord and moved into the house with her father and William Oliver and his wife. The two sons, Richard and Samuel, children of John Berry Oliver by his last wife, were also living with him at that time. Trouble and discord developed between appellant and William and his wife in the small house, which resulted in William's leaving the place with his wife, and moving over to live on another farm about a mile and a half from the home place. Richard and Samuel soon moved away, having reached young manhood, but appellant continued to live with her father at his home.

In August, 1944, he had a stroke, at which time the respondent, Gertrude Oliver Young, came down from her home in Aliquippa, Pennsylvania, and stayed two months, caring for and nursing her father along with the appellant. At the end of the two months, the father had sufficiently recovered to travel and Gertrude took him to her home in Pennsylvania, where he lived until his death in April, 1945. Upon his death, the respondent, Gertrude, brought him back to South Carolina where he was buried and she paid the total funeral expenses, which amounted to $547.

While in Pennsylvania at the home of Gertrude, the old man executed a will, which is the one duly admitted to probate, in which he devised to her the land in dispute.

The testimony goes on to show that Cornelia Young, one of the respondents, a sister of William Oliver and Gertrude, lived with her husband within a short distance of her father until he went to Pennsylvania to live with his daughter, Gertrude. They were both solicitous of his welfare, visited him

constantly—almost every day—carried him food and otherwise attended to his needs. They testified that appellant, Ophelia Samuel, was negligent in caring for their father and frequently left him alone at home. Practically every week end she would leave him on Friday or Saturday and not return until the following Monday or Tuesday. According to their testimony, she made at least four trips to Baltimore, remaining away several weeks at a time, and she made a lengthy trip to New York. That before leaving home, she would cook food and leave it in a trunk by his bedside, where it became stale and mouldy. Another son, Fred Oliver, who lived in Asheville, North Carolina, said that he came down to visit his father many times and that on several occasions the appellant was not at home; and that his father told him that he had to stay there by himself most of the time, and that he could not eat the food she left for him.

After the old man had the stroke, in July, 1944, and respondent, Gertrude, came down and cared for him two months, she invited him, as already stated, to return with her to her home in Pennsylvania. He was disinclined to do this, stating that he had some important business to attend to before he could leave; whereupon, the testimony shows, appellant insisted that he go to Pennsylvania with respondent, telling him that he promised to go and that he had to go. There is also testimony to the effect that appellant said prior to the time the old man had the stroke, that it was just as much respondent's duty to look after him as it was her duty.

The evidence strongly tends to show that the old man received no financial aid from appellant. Having a son in the army, he received an allotment of $37 each month from the government. He rented his farm and collected annually $250; and he told his daughter, Cornelia Young, that appellant had "gotten his last cent."

The testimony of appellant in some measure contradicted that of her brothers and sisters with reference to her failure to care for her father, but this testimony is weak and incon-

clusive. She admitted having left him several times to make trips away from home, and that she was in New York on one occasion for at least a week, during which time he was left alone.

It is a well established rule that a party cannot demand the specific performance of a contract of this kind as a matter of right, but that the exercise of this power rests in the sound discretion of the court, in view of all the surrounding circumstances. Before appellant was entitled to this remedy she was required to show not only that she had always been ready and willing to perform on her part, but that the contract had been fully performed by her; and the burden was upon her to prove her case. Such proof by one who invokes the aid of equity should not consist of vague or shadowy evidence or by a mere preponderance of evidence, but by evidence so unquestionable in its character, so clear, cogent and convincing, that no reasonable doubt can be entertained of its truth; that no such doubt can linger, either as to the existence of the contract or the certainty of its terms, or that the plaintiff has wholly performed on her part. *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889. Annotation, Ann. Cas. 1914 A, 399; 44 L. R. A. (N. S.) 733.

The case of *Young v. Levy, supra,* contains a very full enunciation and discussion of the principle involved in this case, and gives citations of practically all of the earlier pertinent cases in this state. In this case, the factual findings of the referee with reference to the non-performance of the contract, have been confirmd by the county court. Under these circumstances, this court will reverse only if such findings are without evidentiary support or if they are against the clear preponderance of the evidence. *Lyon v. Bargiol,* 212 S. C. 266, 47 S. E. (2d) 625; *Young v. Levy,* 206 S. C. 1, 32 S. E. (2d) 889.

After a careful consideration of the record, and keeping in mind the standard of proof required of appellant in a case of this nature, we think the con-

clusion is inescapable that she has failed to carry such burden, and that the evidence is altogether lacking to establish her performance of the contract. The obligation of the appellant under the contract to care for her father, if there was such obligation, appears to have set very lightly upon her, and it went unperformed. The appellant suggests that it may be inferred that the father was satisfied with her care and treatment of him, and waived full performance. Any such inference, however, is refuted by the evidence, and the fact that he devised the property in question to his daughter, Gertrude.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.