16897

ADAMS v. WILLIS
(83 S. E. (2d) 171)

*Messrs. Julien D. Wyatt* and *Felix L. Finley,* of Pickens, and *Leatherwod, Walker, Todd & Mann,* of Greenville, *for Appellant,*

*Messrs. Edward H. Ninestein,* of Walhalla, and *Mann, Arnold & Mann,* of Greenville, *for Respondent,*

July 28, 1954.

HENDERSON, Acting Associate Justice.

Several years ago Whit Holleman was the owner of a lot and filling station in the town of Clemson. On March 24, 1937, he leased the premises to Sinclair Refining Company for a term of ten years, to commence on a date as thereinafter provided, with the privilege of an extension for five additional years, and gave the lessee an option to purchase the property for $7,000.00 at any time during the term of

the lease or of any renewal of it, upon giving thirty days notice.

On August 3, 1943, Mr. Holleman sold the lot to Dr. P. S. McCollum. On May 10, 1945, Dr. McCollum sold a half interest in it to the appellant, Dr. H. H. Willis, and on August 2, 1948, sold him the other half interest.

Sinclair Refining Company assigned the lease and option to the respondent, Roy D. Adams, on May 14, 1952, for a consideration of $1.00 and the further consideration that the assignee would exercise the option by paying the $7,000-.00 to Dr. Willis, and then lease the premises to the Sinclair company for a term of five years, at a specified rental. On May 22, 1952, Adams notified the appellant that he exercised the option to purchase, and thereafter tendered him the $7,000.00, which was refused. Upon the failure of Dr. Willis to convey the lot Adams brought this action for specific performance. The special referee held that he was not entitled to such relief. This holding was reversed by the circuit judge, Honorable J. B. Pruitt, and the appellant was ordered to convey the premises.

We must first decide when the ten year term began, so that we may know when the lease and the renewal ended, and thus see if Adams exercised the option in time. On March 24, 1937, the date of the contract, certain repairs to the filling station were necessary, and it was provided that the term should begin upon the completion of the improvements, at which time the parties were to sign a written memorandum fixing such date as the time for the commencement. Thereafter Holleman signed a statement that the building was ready for occupancy and that he agreed that July 1, 1937, should be considered the date upon which the term should commence and from which rentals should begin. The Sinclair company did not sign the statement, and it was never recorded.

The evidence is clear that actually the repairs were completed, the rent started, and the term began on July 1, 1937.

Holleman so stated, and Sinclair Refining Company, the other party to the contract, recognized that to be the commencement date, as shown in its renewal notice, to be discussed later, and in the assignment of the lease to Adams. However, the appellant Willis says that as to him the lease and option should be regarded as having begun not later than June 1, 1937, since he had no notice of the memorandum signed by Holleman, and since the parties had first supposed that the improvements would be completed by that time.

The lease itself was duly recorded in April, 1937, and so Willis had constructive notice of it when he bought. Indeed, the presence on the lot of a Sinclair station was sufficient to put him on inquiry. *Barksdale v. Hinson,* 212 S. C. 1, 46 S. E. (2d) 170. We think that he had actual notice also. He testified that he knew of the lease when he bought in 1948, and in fact the lease is referred to in his deed. And we believe that the evidence shows that he knew of it when he bought in 1945, since his deed of 1948 recites that a half interest in the lease had been assigned to him by Dr. McCollum on May 10, 1945, which was the precise day on which he had bought the first half interest in the lot.

Having both actual and constructive notice of the lease, he had the duty to make reasonable inquiry and investigation as to its commencement date. *National Bank of Newberry v. Livingston,* 155 S. C. 264, 152 S. E. 410; *Moyle v. Campbell,* 126 S. C. 180, 119 S. E. 186. We think that by due diligence, by asking either Holleman or the Sinclair company, the fact would have been disclosed that the effective date was July 1, 1937, and appellant is chargeable with notice of such fact since inquiry, properly conducted, would certainly have revealed it.

The lease, if duly renewed, would run for fifteen years from July 1, 1937, or until June 30, 1952. It was on May 22, 1952, that respondent gave notice that he would exercise the option. The thirty days of the notice would expire on

June 21, 1952, so Adams was on time, although with little to spare.

The appellant contends, however, that the evidence does not show that the lease was renewed in 1947.

The notice of the Sinclair company to Dr. McCollum, dated March 14, 1947, stating that it exercised its privilege of renewing the lease for an additional five years, was contained in a deposition, and the appellant objected to the opening of the envelope. The ·special referee held that the deposition should be excluded. The circuit judge was of opinion that the referee was in error, and held that the envelope was properly opened and that the deposition should be admitted.

On the face of the envelope, in the upper left corner, appear the name and address of the sender, "Mr. Robert E. Schuster, 600 Fifth Avenue, New York, 20, New York." It is addressed to Honorable E. Inman, Special Referee, Greenville County Court House, Greenville, S. C. On the front of the envelope, in the lower left corner, is written "Roy D. Adams, Plaintiff, vs. H. H. Willis, Defendant." On the reverse side written across the flap after the envelope had been sealed, appears the signature "Robert E. Schuster."

The appellant says that nowhere upon the envelope does it appear that Robert E. Schuster is a notary public, or that the envelope contains a deposition. However valid these objections might be in the ordinary case, in this action a stipulation had been entered into by the parties. Notice of the taking of the deposition had been given by the respondent, setting forth the time and place, and that it would be before Robert E. Schuster, a notary public for New York. Attorneys for the appellant consented to the time and place of taking the deposition, and further stipulated that "same shall be mailed by the above named notary public to E. Inman, Special Referee, Greenville County Court House, Greenville, S. C."

There was no contention that the deposition had been tampered with. It was opened by the special referee in the pres-

ence of the parties. Ordinarily a deposition is sent to the clerk of court, but here it was mailed to the special referee by agreement. In view of the stipulation we think that the trial judge correctly held that there was a substantial compliance with the statutory requirements, and that the deposition was admissible.

The appellant also says that it does not appear that the notice was actually received by Dr. McCollum, since the registered mail return card is signed "Dr. P. S. McCollum, by Albert Meiburg." The evidence shows that Meiburg was an employee of Dr. McCollum in his store, but apart from the deposition the fact is established that Dr. McCollum did receive the notice. On August 2, 1948, he assigned the lease to the appellant, and in his deed of that date he said that the property was subject to the lease.

At the time the Sinclair company gave the notice of renewal to Dr. McCollum, Willis owned a half interest in the property, but the lease provided that if there should be more than one lessor "notice to any one of them shall constitute notice to all." Besides, we think that the evidence shows that Dr. Willis himself, after 1947, recognized that the lease had been renewed. On January 25, 1949, he recorded an assignment of it by Dr. McCollum to himself. For years after 1947 he accepted the same $45.00 a month rent which the lease called for although the property had increased in rental value since 1937. In his letter of June 11, 1952, to the Sinclair company he said that "your lease" for the filling station had terminated on June 1, 1952, and stated that the lessee had failed to arrange for a new lease. He offered in evidence a voucher attached to a rental check of the tenant, showing that it was for additional rental "for the year ending June 30, 1950."

We think that the trial judge accurately held that the lease had been renewed for the five year period.

In addition to the "purchase option" in the lease there is another clause known as the "purchase refusal," and one of the exceptions relates to it. In

that clause it is set forth that in the event the lessor shall receive from a third person a *bona fide* offer to purchase the premises at a specified price, and if the lessor shall decide to sell for that amount, he shall notify the lessee, who shall have the refusal or option of buying the premises at such price, and if the lessee does not elect within ten days to purchase, the lessor may go ahead and sell to the third person, subject to the lease "and to the extension and/or additional purchase options, if any, herein granted to the lessee."

The testimony shows that shortly before August 3, 1943, Holleman informed the Sinclair company that he had an offer of $7,000.00 for the property. The lessee did not elect to purchase at that time, and Holleman then sold the lot to McCollum.

It is the contention of the appellant that the refusal of the Sinclair company to purchase the property then had the effect of terminating its right thereafter to exercise its purchase option.

The special referee states in his report that he found it unnecessary, in his view of the case, to pass upon this question. It does not appear in the record that this point was presented to Judge Pruitt for decision, and for that reason we might well pass the exception by. However, as counsel for both sides have argued it, we may discuss it briefly and say that we do not think that there is merit in it.

The purchase refusal clause here is quite different from that in the case of *Shell Oil Co. v. Blumberg,* 5 Cir., 154 F. (2d) 251, upon which appellant mainly relies. The clause before us is precisely the same, except as to the amount, as that set forth in *Sinclair Refining Co. v. Clay,* D. C., 102 F. Supp. 732, 735, affirmed by the Circuit Court of Appeals in 6 Cir., 194 F. (2d) 532. In that case the Court said: "Contrary to the *Blumberg case,* the parties here expressly agreed that the purchase option was to continue in the event of a sale to a third party, and this intent must be carried out by the court."

It will be observed that the present lease provides that any sale shall be subject to the purchase option, wherein the lessee had the right, at any time during the term of the lease, to buy the property for $7,000.00. The rights of the lessee under the purchase option are continuing, and were not extinguished by its refusal to buy in 1943.

The circuit judge held that evidence of the financial worth of the appellant was immaterial and irrelevant, and that evidence as to what he had paid for the property, and its value at the time specific performance was sought, was inadmissible; and this is the basis of some of the exceptions.

It appears that testimony as to appellant's financial worth was received without objection, and thus it is a part of the record. However, Judge Pruitt had a right, after considering the evidence, to hold that it was without weight in the case. When land is the subject matter of an agreement the jurisdiction of equity to enforce specific performance is undisputed, and does not depend on the inadequacy of the legal remedy in the particular case. *Singleton v. Cuttino,* 107 S. C. 465, 92 S. E. 1046; *Hammond v. Foreman,* 48 S. C. 175, 26 S. E. 212; 81 C. J. S., Specific Performance, § 62, p. 557.

We think that the circuit judge rightly held that evidence as to what appellant paid for the land had no relevancy, and was inadmissible. When he bought the lot he had notice of the outstanding $7,000.00 option held by the lessee.

Appellant sought to prove that in 1952 the property was worth $18,000.00, and the trial judge held this to be inadmissible. One of the defenses in the answer was that Adams did not have such equitable status as to entitle him to specific performance. We believe that it would have been proper to admit this evidence, so that the circuit judge could consider it, along with other facts, in order to pass upon the merits of this defense. However, with the evidence in, and duly considered, specific performance should

nevertheless be granted, since it is well settled that a mere change in the value of land will not justify a refusal to grant such relief. *Holly Hill Lumber Co. v. McCoy,* 201 S. C. 427, 23 S. E. (2d) 372, 373, 380.

The last contention of the appellant is that since specific performance may not be demanded as a matter of right, the circuit judge in a proper exercise of discretion should have refused to grant it.

We can readily understand how it is. that the appellant does not like to see Adams come, during the last days of the option, and upon a small consideration reap the benefit of the increase in the value of the lot. However, it cannot be overlooked that people make their own contracts; they have a right to grant fifteen year options if they so desire; and the holder of an option may exercise it at any time while it is in force, even on the last day; the Sinclair company could have exercised the option in May of 1952; the contract gave it the right to assign the option; and the assignment to Adams did not place the appellant in any worse position than he was in before.

There is not the slightest contention of unfair dealings when the contract was made in 1937. It appears that at that time $7,000.00 was a full price for the land. Even as late as 1943 Mr. Holleman sold it for that amount. We must look to the situation as it existed when the contract was made, not as it may have been in 1952.

In *Holly Hill Lumber Co. v. McCoy,* above, it was said: "The question of adequacy of price must be considered as of the date of the contract, and the subsequent enhancement in value would not justify refusal of specific performance. *Shannon v. Freeman,* 117 S. C. 480, 109 S. E. 406.

"The discretion to grant or refuse specific performance is not an arbitrary or capricious one, but a judicial discretion, to be exercised in accordance with the special rules and practices of equity, and with regard to the facts and circumstances of the particular case."

The same rule applies if the value of the property should go down instead of up. *Hammassapoulo v. Hammassapoulo*, 134 S. C. 54, 131 S. E. 319.

In *New v. Collins*, 126 S. C. 294, 119 S. E. 835, it was stated that while it is true that specific performance rests in sound discretion, the Court must be governed by the rules of law and equity, and will enforce a contract which is fair and was entered into openly and aboveboard.

Accordingly, the exceptions are overruled, and the judgment is affirmed.

Stukes, Taylor, Oxner and Legge, JJ., concur.