Earl L. SANDS and Rita D. Sands, husband and wife, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Plaintiff,

v.

Earl L. SANDS, a/k/a E. L. Sands, and Rita Sands, his wife, James E. Comrada and Florence Comrada, his wife, Frederic P. Holbrook, Trustee in Bankruptcy of James E. Comrada, and First Federal Savings and Loan Association of Bremerton, Defendants.

Nos. 4923, 4959.

United States District Court
W. D. Washington, N. D.

Oct. 18, 1960.

David L. Jamieson, Tacoma, Wash., for Earl L. Sands and wife.

Charles P. Moriarty, U. S. Atty., James F. McAteer, Asst. U. S. Atty., Seattle, Wash., for the United States.

Marion Garland of Garland & Bishop, Bremerton, Wash., for First Federal Savings & Loan Ass'n of Bremerton.

LINDBERG, Chief Judge.

This memorandum opinion relates to two separate actions consolidated for trial because of the identity of the parties involved and a similarity of issues. The first action, number 4923, was brought by Earl L. Sands and Rita D. Sands against the United States government and as amended by stipulation and pretrial order the plaintiffs seek damages in the amount of $9,999.99 for an alleged unlawful taking without just compensation. In the second action, number 4959, brought by the United States against Earl L. Sands and wife, James E. Comrada and wife, Frederic P. Holbrook, Trustee in Bankruptcy of James E. Comrada, and First Federal Savings and Loan Association of Bremerton, the United States

882

seeks a declaratory judgment as to the rights of the respective parties arising out of a proposal to lease certain property for use as a post office. Frederic P. Holbrook, Trustee in Bankruptcy of James E. Comrada, and Earl L. Sands entered into an agreement whereby Holbrook, in consideration of Sands assigning to him any proceeds in this action up to $1,400, assigned to Sands any rights or interest he may have in any additional proceeds of this action, and withdrew as a party. Neither James nor Florence Comrada took part in the trial of this lawsuit.

Inasmuch as the pretrial orders set out in considerable detail the admitted and undisputed facts it will serve no useful purpose to repeat them all at this time. However, a brief résumé of the circumstances which gave rise to these actions will help in clarifying the issues involved.

In response to a request for bids to furnish postal facilities on Bainbridge Island, James Comrada submitted a proposal to lease quarters to the Postmaster General in June of 1955. This proposal was amended in December of that year and accepted by the Postmaster General in February of 1956. In January, 1956 Comrada entered into a contract with Sands whereby Sands agreed to construct a post office building on property owned by Comrada for an agreed figure. On May 23, 1956 Comrada conveyed to Sands, by statutory warranty deed, the real estate on which the building was then under construction. On July 25, 1956, Sands executed a mortgage on this property, as security for a loan, to the First Federal Savings and Loan Association of Bremerton. That mortgage has subsequently been foreclosed and the First Federal Savings and Loan Association has become the legal owner of the property subject only to Sands' right of redemption.

The construction of the building did not proceed as rapidly as was desired by the government and in the fall of 1956 they began to urge an early completion. During October the government began to insist that the building be ready for oc-

cupancy not later than December 1, and it was at this point that the dispute arose as to the terms of the occupancy. On December 1, 1956, the government secured possession of the building and has continued to operate a postal facility therein to the commencement of this action.

It is clear that the basic issue in this case is the nature and validity of the alleged lease or proposal to lease which is plaintiff's exhibit number 1. At the outset we are confronted with the question of whether this document is to be construed as a lease or as an agreement to lease.

■■■ As I announced at the commencement of the trial, federal law and not Washington law should govern this suit. At this point I will briefly state my reasons for so holding. When the United States government sets out to establish postal facilities they are engaged in performing an essential governmental function as specifically empowered by the Constitution. Whenever the government is engaged in such an activity, an activity which by its very nature will be carried on in all cities, towns and communities throughout all states of the Union, it is important that uniformity be achieved. To require that negotiations for securing postal facilities be conducted within the framework of each state's laws, which are admittedly varied and often contradictory, would impose an intolerable burden upon the government. The respect which the federal government normally accords the laws of each individual state must give way in the interest of uniformity when the government is performing a constitutional function. This was the holding of the United States Supreme Court in Clearfield Trust Company v. United States, 1943, 318 U.S. 363, 63 S. Ct. 573, 87 L.Ed. 838, and the same reasoning used there applies to this case. A similar conclusion was also reached in United States v. Allegheny County, 1944, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 and United States v. View Crest Garden Apts., Inc., 9 Cir., 1959, 268 F.2d 380. It should be observed in passing

that the statement made in Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 822, 82 L.Ed. 1188 that "there is no federal general common law" has been limited in its application to those cases in which federal jurisdiction is based on diversity of citizenship. See United States v. Standard Oil Co., 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067.

■ Proceeding, therefore, under the mandate of federal law, is the proposal to lease quarters executed by Comrada and the government to be construed as a lease or as an agreement to lease? The government contends that under federal law this proposal should be construed as a lease, not merely an agreement to lease. With this I cannot agree. As is well stated in the American Law of Property, § 3.17:

"Whether a given transaction results in a lease or an agreement to give a lease is a matter of intention to be determined from the language and acts of the parties. No precise words are necessary to create a lease, but the use of language of present demise—demise, lease, to farm let—indicates that a lease is intended."

In United States v. 257.654 Acres of Land, etc., D.C.Haw.1947, 72 F.Supp. 903, the court was faced with a problem similar to the present one. That court emphasized that it is a question of intention. Did the parties to the agreement intend that it should be a presently-operative lease or an agreement to later execute a lease? In addition, the district court pointed out that where the instrument in question provides for the later execution of a lease that fact is some evidence that the parties did not intend a present demise of the premises.

■ A consideration of all the exhibits and testimony leads irresistibly to the conclusion that both Comrada and the government did not intend the proposal they executed to be a lease. Not only does the proposal itself provide that the undersigned "agrees to lease" but the testimony of the government's own witness was to the effect that a later lease was contemplated and would be entered into. Nowhere was any language used which indicates that a present demise of the premises was intended. Any conclusion that could be drawn from the fact that Comrada signed the sample copy of the lease on the reverse side of the proposal, which action is at the most ambiguous, can have no effect on the result. Unilateral intention is not sufficient, and as I have already indicated, the government did not intend to enter into a lease at that time. Therefore, it is my conclusion that the proposal to lease is in law an agreement to execute a lease in the future.

This conclusion leads then to the next consideration, that is, what is the legal effect of an agreement to lease. What interests did the execution of this agreement and the action of the parties thereunder create?

■ The prevailing general rule is that an agreement to lease creates a legal relationship similar to that created by an earnest money agreement. That is, it creates an equitable right in the proposed lessee, and this equitable right can be specifically enforced against the proposed lessor or his successor in interest, provided the general requirements for specific performance are met. However, conveyance of the property to a bona fide purchaser or the creation of a subsequent interest by a bona fide encumbrancer will cut off the equitable rights of the proposed lessee. Halsell v. Renfrow, 1906, 202 U.S. 287, 26 S.Ct. 610, 50 L.Ed. 1032. On the other hand, however, if the subsequent purchaser or encumbrancer obtains his interest in the property with notice of the rights of the proposed lessee or vendee, he is bound by those rights and the contract can be specifically enforced against him. See Ebensberger v. Sinclair Refining Co., 5 Cir., 1948, 165 F.2d 803.

Therefore, the key factual question, as I see it, is, did Sands and/or the First Federal Savings and Loan Association have notice of the agreement to lease executed by the government and Comrada?

884

█ Legal notice can be either one of two types—actual or constructive. Constructive notice is generally held to be that notice which a person is deemed to have by operation of law, commonly through the recording statutes. Had the government recorded this agreement, assuming it was recordable, Sands and the First Federal Savings and Loan Association would have had constructive notice of the government's interest in the property and this would have ended the case. However, the instrument was not recorded. Consequently, unless Sands and First Federal had actual notice of the government's interest, they would, I believe, have the status of a bona fide purchaser and a bona fide encumbrancer.

█ Like notice itself, actual notice also consists of two types. In its purest sense actual notice is knowledge of the essential facts involved. There is nothing in the evidence to indicate that either Sands or First Federal had actual knowledge of the agreement to lease and its terms. However, actual notice may also consist of implied or inquiry notice.

As was well stated by the Second Circuit Court of Appeals in The Tompkins, 2 Cir., 1926, 13 F.2d 552, 554:

"If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary diligence he would have acquired. Knowledge of facts, which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed."

See also The Lulu, 1868, 10 Wall. 192, at page 200, 77 U.S. 192, at page 200, 19 L.Ed. 906, where the United States Supreme Court uses much the same language.

Thus it can be seen that if either Sands or the First Federal Savings and Loan had knowledge of facts which would excite a prudent man to make further reasonable inquiry, and such an inquiry, if made, would have disclosed the interest which the government had in this property, they would be charged with having such knowledge and their interests would be subject to that of the government. It is my opinion, and I so find, that such was the case. Both Sands and First Federal Savings and Loan Association are chargeable with actual notice of the government's interests.

█ It is undisputed that both Sands and the First Federal Savings and Loan Association knew that there was a building being constructed on the property and that the building was to be used for a particular purpose—a post office. Sands knew this by his own admission, and the First Federal Savings and Loan knew through a statement on the loan application and an inspection made by their president. This was stipulated in the pretrial order in paragraph 25. The presence of a building being built for a particular purpose and for use by a particular tenant should be sufficient notice to stimulate an investigation to find out what interest or arrangement the eventual occupant might have with the present owner. To do less would fail to fulfill the duty imposed by the law. Adams v. Willis, 1954, 225 S.C. 518, 83 S.E.2d 171, and Rochester Poster Advertising Co. v. Smithers, 1928, 224 App.Div. 435, 231 N.Y.S. 315, are cases in which a structure on the property gave notice of the rights of another. It does not seem reasonable that a person would be constructing a post office on his property with only a hope that the post office department might in the future rent it from him. Reason and common experience dictate that some sort of an arrangement or agreement must have existed. The evidence in this case shows that any investigation or inquiry made either of the local postmaster or the postal inspector would have led to a disclosure that the government did have an agreement to lease the premises after construction of the building as well as the terms of such proposed lease. The fact that this

information was not as readily available as are public records should make no difference. The postal inspector testified that he would have given the information to any properly interested person seeking it for legitimate purposes, or at least have referred them to Comrada. Further, there has been no evidence that Comrada, had he been questioned, would not have disclosed the details of his agreement.

Therefore, it is my conclusion that under the evidence a reasonably prudent person would have sought further information. Had inquiry been made by Sands or First Federal as to the particulars of any rental or lease arrangement existing with respect to the building under construction, full information would have been forthcoming from the postal inspector or, so far as the evidence establishes, from Comrada. As to the suggestion made by First Federal Savings and Loan that they performed their duty of making reasonable inquiry when they asked Sands if the government had a lease, it does not appear to me to be prudent banking practice to accept without further investigation a prospective borrower's statements as to the facts surrounding his security.

Both Sands and the First Federal have urged other contentions to defeat the government's claim with respect to specific performance. One argument is that the terms of the agreement are not sufficiently definite to be specifically enforced. This is not supported by the facts. The proposal to lease states that the rental is to be so much per year payable monthly. The fact that the exact day of the month on which the rental is due is not material. It is also alleged that the description of the property in the agreement is not specific enough. As to this contention, it is my view that the general rule as to the degree of certainty required with respect to description of real estate in contracts of lease or sale thereof has been met by the Proposal to Lease itself when considered in light of other admissible evidence as to the identity of the real estate and building involved. See 49 Am.Jur., Statute of Frauds, Sections 347, 348, 349, beginning page 655; 37 C.J.S. Frauds, Statute of, §§ 182, 183, 184, beginning page 668. Although the description of the premises, as set out in the proposal to lease certainly leaves much to be desired, the fact remains, first, there was never any question in the minds of any of the parties as to the specific property involved, and, second, the government was in possession of the property at the time of the commencement of this action, and therefore any uncertainty as to the location of the property has been cleared up by the action of the parties. 81 C.J.S. Specific Performance § 33. The peculiar Washington rule which requires that agreements such as this contain a legal description of the property involved before specific performance will be ordered is not controlling and should not be applied here. As I indicated at the outset, federal law is applicable and while in determining what the federal law is I may be free to follow state court decisions as indicative of what the law is or should be, to adopt the Washington rule would be accepting an extreme minority rule which, as far as I can ascertain, has not been followed by any other state in the Union.

The "clean hands" doctrine has also been raised as a defense. It is my opinion that this contention is without merit. The circumstances surrounding the obtaining of the key to the building by the Winslow postmaster, although disputed, cannot be held to be unconscionable conduct sufficient to bar equitable relief. At the time the key was obtained the government under the interpretation I have adopted had a right to possession and they were only attempting to enforce this right by the fastest peaceable means. As for the contention that the government was guilty of bad faith by not having this agreement recorded, this also is without merit. Certainly recording the agreement would seem to be the most effective way for the government to protect their interests, but the fact remains that the government was under no duty

to do so. The government, or for that matter any private individual, should not and cannot be penalized, except perhaps under extraordinary circumstances not present here, for not doing what they are not required by law to do. A thorough search has failed to reveal any case in which the failure to record was held to be conduct sufficient to bar equitable relief, and none have been cited to me.

The final contention with respect to the validity and enforcement of the lease agreement is that there were modifications in the building which substantially changed the terms of the proposal. This contention cannot be sustained. Admittedly there were modifications made and it is disputed as to who ordered them. However, exactly who ordered what is not important so far as the enforcibility of the proposal is concerned since I do not consider the changes that were made, as disclosed by the evidence, as being substantial.

 It is my opinion that the proposal to lease is valid and binding upon Comrada and also upon both Sands and the First Federal Savings and Loan Association as subsequent owners or mortgagee, concluding, as I have, that they acquired their interests in the subject property with what constitutes actual notice of the rights of the United States.

The remaining issue for determination relates to the rights of the various parties to the rents accumulated under the occupancy of the post office by the United States, as well as the right of the government to set off against said rents for the sum expended for completion of the building in the amount of $716.55 and repairs to the occupied premises since December 1, 1956 in the amount of $215.80. With respect to the cost of completion of construction, paragraph 23 of the admitted facts of the pretrial order, approved by counsel for all parties, provides, in part, as follows:

"If the Court finds that the proposal to lease quarters between Comrada and the Post Office Department is binding on the parties hereto,

such expenditure shall be a set off of the monies due from the post office."

The court having found the proposal to lease binding on all the parties, the amount expended by the government for completion of the building in the amount of $716.55 may be set off against the amount owing for rents.

With respect to the admitted amount of $215.80 paid for repairs to the post office building and premises, there is no evidence to establish that the amount expended and the repairs made are other than reasonable and under the terms of the proposal to lease this item is chargeable to the lessor and may be set off against the rents owing to the owners.

The troublesome question arising in determining the portion of rent payable as between Comrada or his trustee in bankruptcy on the one hand and Sands on the other, has been simplified because of the "Stipulation and Partial Assignment of Proceeds" entered into and agreed to between Sands and the Trustee in Bankruptcy, wherein it is "Stipulated And Agreed that Frederic P. Holbrook, Trustee for James E. Comrada, holds all rights to the net sum of Fourteen Hundred Dollars ($1400.00) out of any and all rents or damages due to Earl L. Sands, James E. Comrada and/or Frederic P. Holbrook, Trustee for James E. Comrada. * * * " Under this stipulation $1400 of the rents owing by the government are payable to Frederic P. Holbrook, Trustee in Bankruptcy for James E. Comrada, and the balance of rent owing by the United States from December 1, 1956 to March 25, 1960, less $716.55 for completion of the building, and less that portion of $215.80 expended for repair to the post office building and premises between December 1, 1956 and March 25, 1960, is payable to Sands.

Rent accruing after March 25, 1960 is payable to the First Federal Savings and Loan Association of Bremerton or any subsequent owner.

In view of the decision I have reached with respect to the issues presented in the declaratory judgment action—cause

No. 4959—the plaintiff in cause No. 4923 (Sands v. United States) is not entitled to recover except to the extent I have indicated, and it would appear that that action should be dismissed after entry of judgment in cause No. 4959.

Counsel for the United States will prepare and submit upon notice and not later than November 14, 1960, findings of fact, conclusions of law and judgment or decree in accordance with the views I have expressed. Each party will pay his or its own costs.