20014

M. N. CARROLL, Respondent, v. Jack H. PAGE et al., Appellants
(215 S. E. (2d) 203)

*Messrs. H. T. Abbott, of Conway,* and *Benny R. Greer,* *of Darlington, for Appellants, Jack H. Page* and *others,*

*Howard A. Anderson, Jr., Esq.,* of North Myrtle Beach, *for Appellant, Carolina Realty & Auction Company, Inc., Trustee,*

*H. E. McCaskill, Esq.,* of Conway, *for Respondent.*

*Howard A. Anderson, Jr., Esq.,* of North Myrtle Beach, *for Appellant, Carolina Realty & Auction Company, Inc.,* Trustee, in Reply.

May 15, 1975.

Moss, Chief Justice:

M. N. Carroll, the respondent herein, brought this action against Cordie Page to compel specific performance of an

option to purchase real estate contained in a lease. Carolina Realty & Auction Company, Inc., Trustee, was joined as a party to this action because of the execution of a subsequent conditional option entered into by Cordie Page with it, and by cross-complaint it sought specific performance on the basis of such option.

Cordie Page died on February 16, 1973, and Jack H. Page and A. J. Ambrose, as Executors, and Sarah P. Cooper, as Executrix, of the Last Will and Testament were substituted as parties to the action. For clarity they will be referred to as "Page".

Carroll and Carolina Realty asked for alternate relief in the form of money damages. This case, with the consent of the parties, was referred to the Master in Equity for Horry County, to take the testimony and report his findings of fact and of law to the circuit court. The Master took the testimony and filed his report recommending that both the complaint and the cross-complaint be dismissed and that Page refund to Carolina Realty the sums paid for the second option and extension thereof, with interest. The case was recommitted to the Master for additional findings of fact. After the supplemental report was filed, the exceptions of the parties to the recommendations of the Master were heard. The trial judge issued his decree in which he reversed the Master and ordered Page to convey the land in question to the respondent and refund to Carolina Realty & Auction Company, Inc., Trustee, the option fee paid by it to Page. From this decree Carolina Realty & Auction Company, Inc., Trustee, and Page have appealed to this Court.

The scope of review in a case where the Master and the circuit judge have disagreed is well settled in this State. In the case of *Talbot v. James*, 259 S. C. 73, 190 S. E. (2d) 759, this Court said:

"This being an equity case and the Master and the Circuit Judge having disagreed and made contrary findings on the material issues in the case, this Court has jurisdiction to

consider the evidence and to make findings in accordance with our view of the preponderance or greater weight of the evidence."

As to actions for specific performance, this Court said in *Flowers v. Roberts,* 220 S. C. 110, 66 S. E. (2d) 612:

"The Court had under consideration such a contract in *Samuel v. Young,* 214 S. C. 91, 51 S. E. (2d) 367, 370, where it was stated: 'It is a well established rule that a party cannot demand the specific performance of a contract of this kind as a matter of right, but that the exercise of this power rested in the sound discretion of the Court, in view of all the surrounding circumstances.' "

This is an action in equity and as stated in 30 C. J. S. Equity § 89, p. 976:

"In applying the doctrines of equity, the equities of both sides are to be considered, and each case must be decided on its own particular facts."

Page and the respondent entered into an agreement on January 13, 1964, designated as a "Lease of Fishing and Hunting Rights and Use of Building." The lease as amended covered the described real estate and extended through the date of March 31, 1974. The lease provided in part as follows:

"It is agreed that should the Lessor elect or should the Lessor decide to sell the whole property at any specific figure, he does hereby agree to give the Lessee the right to buy the whole property at the figure so determined; should the Lessee decide that he does not want to take the the whole property at the price named, then he agrees to sell his rights in the property under this lease after the first five (5) years has expired, at a price which would pay him for any expense that he has gone to in repairing or improving the property, under this lease, and which would pay him a reasonable price for his rights for the remainder of the term of this lease. Such improvements are to include improvements on

the buildings, duck blinds or of such nature back in rice fields."

The record shows that prior to May 5, 1969, Page notified the respondent that he had decided to sell the described real estate for the sum of $125,000.00, and that he could purchase this property for the price stated if he so desired. There is some dispute as to the sequence of events which ensued. However, it is clear that the respondent did not immediately accept Page's offer to sell but said that he needed a few days to think it over. The Master found that the respondent did not make an unconditional acceptance of Page's offer until June 16, 1970. The Master further found that the attempted acceptance was not made within a reasonable time and that the respondent was not entitled to specific performance. The trial judge found that the acceptance was made immediately prior to the service of suit papers on May 29, 1970. The trial judge then found that, although respondent's negotiations were less than definite in nature, his acceptance was in compliance with the terms of the option, citing the case of *Adams v. Willis*, 225 S. C. 518, 83 S. E. (2d) 171. In our opinion, this case is not controlling because the rights of the lessee under the purchase option were continuing rights by virtue of the specific language used. It was there provided that if the lessee did not elect within ten days to purchase, then the lessor could sell, but subject to the lease and to the continuing right of the lessee to purchase. The Court further held in the *Adams* case that the lease was in effect at the time plaintiff exercised the option to purchase and that such exercise was timely made.

The respondent admits that Page informed him that he had given an option to Carolina Realty & Auction Company, Inc., as Trustee for one Cannon, to purchase the property in question for $125,000.00 and that he would sell the same property to the respondent at the same price. To this the respondent admits that he replied, "I wasn't sure I could handle the thing at that time, but I'd like for him to give me a few days to decide on it."

The first unconditional acceptance by the respondent of the offer made by Page was found by the trial judge to be on May 29, 1970, and by the Master to be on June 16, 1970. Under either view the acceptance by the respondent was made more than one year after Page made his offer. We point out that no time was fixed in the option given to the respondent for his acceptance of Page's offer to sell, but the respondent only asked, following the offer to sell, for "a few days" to decide as to whether he would exercise his option to purchase the property.

It is sufficient to say that one year's delay between the offer made by Page and the acceptance by the respondent cannot be construed to have taken place within "a few days." It follows that the respondent did not exercise his option to purchase within a reasonable time, and he is, therefore, not entitled to specific performance. *Lindler v. Adcock,* 250 S. C. 383, 158 S. E. (2d) 192.

The next question is whether Carolina Realty, as Trustee, is entitled to specific performance against Page. Here again the Master and trial judge disagreed. On May 5, 1969, Page gave an option to Carolina Realty as Trustee, whereby in consideration of the sum of $1,500.00 he agreed to sell to Carolina Realty the property involved for the total sum of $125,000.00 the said option extending until 12:00 noon on November 5, 1969. On October 22, 1969, a new option was entered into between these parties whereby for an additional consideration the terms of the option were extended until 12:00 noon on May 5, 1970, with a new purchase price of $127,822.50. A new provision was inserted in this option, as follows:

"It is understood and agreed that if title is not approved and if the grantor is unable to comply with his portion of the agreement, then in that event, he will refund the $1,500.00 paid for option. It is further agreed that the grantor will make every effort to clear any possible defects in title at least two months before the closing date and if it appears that

title cannot be cleared at least two months before the closing date, the grantor will refund option money."

Page, for a consideration, agreed to extend the foregoing option until 12:00 noon on June 6, 1970.

The Master found that Carolina Realty was not entitled to specific performance for the reason that it was acting as realtor for one Ralph Cannon in negotiating the options of May 5, 1969, and October 22, 1969. Cannon died November 1, 1969. The Master held that since there was no assignment of rights to Carolina Realty, and since the Trusteeship was not coupled with an interest, the agency of Carolina Realty terminated and it had no authority to require specific performance.

The trial judge found, however, that the extension of the option was given to Carolina Realty as a real party in interest and that Cannon's death did not prevent Carolina Realty from asserting rights under the option. The judge then concluded that, except for the prior rights of the respondent, Carolina Realty would be entitled to specific performance.

The record is clear, and the trial judge correctly found, that the new provision in the second option to Carolina Realty was inserted solely because of the knowledge of the difficulties between Page and Carroll. This provision stated that if the grantor is unable to comply with the option, he would refund the $1,500.00 paid for the option. The provision further stated that the grantor Page would make every effort to clear up any possible defects in the title at least two months before the closing date and "if it appears that title cannot be cleared at least two monhs before the closing date, the grantor will refund option money." The parties chose to make specific arrangements to cover the eventuality that the problem between Page and Carroll would not be cleared up, and make time of the essence. Since these problems were not cleared up at least two months prior to the closing date, this provision operated to terminate the option and to require the refund of the money

paid. The Master's Report provides for the repayment of the option money with interest, and we direct payment as a refund as provided therein.

The decree of the trial judge is reversed, and this case remanded with instructions to dismiss the complaint of the respondent and the cross-complaint of Carolina Realty, and that Page refund, with interest, the consideration paid for the options to Carolina Realty & Auction Company, Inc., as Trustee.

Reversed and remanded.

LEWIS, LITTLEJOHN and NESS, JJ., concur.

BUSSEY, J., dissents.

BUSSEY, Justice (dissenting):

My concept as to the facts, equities and issues of the instant cause being considerably different, I most respectfully dissent. I am convinced that the equities of this case greatly preponderate in favor of the respondent, Carroll, and that the judgment of the lower court should be affirmed.

Carroll is an automobile dealer, while the lessor, Page, was an attorney of long years of experience. The contract between Carroll and Page was prepared in the office of Page's attorney, who was also his nephew. It follows that any construction of the contract must be liberal in favor of Carroll and strict against the lessor. The construction placed upon the contract by the parties themselves is important, and according to even the testimony of Page, the lessor, he construed the contract as giving Carroll a right of first refusal to purchase the property at any price acceptable to Page offered by a third party. Such a construction is in accord with what the parties must have intended. If Page could foreclose Carroll's option to purchase, by naming an arbitrarily high price or a price substantially higher than any offer he had from a third party, the option would be meaningless.

The option given to Carolina on May 5, 1969 was accepted by Carolina with the full knowledge of Carroll's option.

There are conflicts in the testimony and considerable vagueness as to dates, but it is clearly inferable from the testimony of Page, himself, that Carroll was not told about the Carolina option until approximately one month after it was delivered, or sometime in early June, 1969. Page testified that when he told Carroll thereabout, Carroll responded, "give me about 30 days or give me a little time to think about it." On July 8, 1969, Carroll's attorney, by letter to Page, advised that Carroll was interested in meeting any offer received by Page from any other source and requested a copy of the option executed in favor of Carolina, which was supplied sometime later, receipt thereof being acknowledged on July 25, 1969.

The real bone of contention developed bewteen the parties thereafter. Carroll took the position that upon his purchase of the property he should be allowed a discount on the purchase price of $125,000, tantamount to approximately what Page would have to pay him for the improvements and the value of the remainder of the leasehold if Page sold to Carolina for the $125,000. Page took the position that he would allow no discount, since the contract did not expressly provide for any recoupment by Carroll of the value of the leasehold and improvements in the event of a purchase by Carroll. The natural effect of Page's position was that he would not sell to Carroll unless Carroll paid a higher price than he hoped to obtain from Carolina, since if he sold to Carolina the price paid by Carolina would be reduced by whatever amount Page was eventually required to pay Carroll for the improvements and value of the leasehold.

The record reflects that Carroll and his counsel made every reasonable effort to resolve the controversy, but met with virtually no cooperation from Page. Under date of September 30, Carroll's counsel wrote Page offering, (1) to purchase for $125,000, less credit for Carroll's investment; (2) to continue the lease for the remainder of the term; or (3) to cancel the lease upon being paid for his investment and re-

maining portion of the lease. While he stated the credit he thought he was entitled to, he expressed a willingness to discuss the matter in detail and adjust any figures that might be erroneous. Such letter received no meaningful response from Page. All efforts by Carroll to equitably adjust the controversy having been rejected, he finally, in May, 1970, offered to purchase from Page on the same terms and conditions as contained in the final Carolina option without any credit for Carroll's investment in the property or the value of the remaining leasehold. Such offer was rejected by Page and suit commenced on May 29, 1970. Not until seven days after this suit was commenced did Carolina offer to exercise its option.

To summarize the situation, Page, under a contract prepared by him and his attorney, sought to construe the same strictly in his favor and against the lessee. By his own testimony he recognized that Carroll was given the first refusal to purchase the property at whatever acceptable price Page might be offered by another, but at the same time refused to sell to Carroll unless Carroll, in effect, paid him substantially more than he could actually net from sale to another. At the very least, Carroll was entitled, in the course of extensive efforts on his part, to a definitive answer from Page as to what Page would agree to pay him for the improvements and the remaining leasehold in the event the property was sold to Carolina so as to better enable Carroll to make an intelligent decision.

While Page by his option offered to sell to Carolina, he did not have an offer from Carolina in any amount until June 5, 1970, when it accepted Page's offer. Treating Carroll's option as the parties themselves construed it, that is, a right of first refusal, until Page received an offer and communicated such to Carroll and gave Carroll a reasonable time in which to meet the offered price, Carroll's option could not be terminated. It follows that the timeliness of Carroll's acceptance of the option must be measured from

June 5, 1970, the first time Page ever had an offer on the property. Until that date the option in favor of Carolina was only an offer on the part of Page, subject to the continuing right of Carroll to meet any offer received by Page. *Adams v. Willis,* 225 S. C. 518, 83 S. E. (2d) 171 (1954). Prior thereto Page had been advised that Carroll was willing to purchase under the same terms and conditions as Page had offered to sell to Carolina, without any discount in favor of Carroll for his improvements and leasehold interest.

Since I am of the view that Carroll was clearly entitled to a decree of specific performance, I do not necessarily reach the issue of whether, but for Carroll's entitlement, Carolina would be entitled to a similar decree. I am much inclined to the view, however, that the circuit judge was also correct as to that aspect of this case.