746 S.E.2d 26

KRITI RIPLEY, LLC and Ashley River
Properties II, LLC, Appellants,

v.

EMERALD INVESTMENTS, LLC and
Stuart Longman, Respondents.

Appellate Case No. 2011–201949.

No. 27277.

Supreme Court of South Carolina.

Heard May 1, 2013.
Decided June 26, 2013.
Rehearing Denied Aug. 8, 2013.

368

William C. Cleveland, of Womble, Carlyle, Sandridge, and Rice, LLP, of Charleston, for Appellants.

Richard S. Rosen, Daniel F. Blanchard, III, and James A. Bruorton, IV, all of Rosen, Rosen, & Hagood, LLC, of Charleston, for Respondents.

Justice HEARN.

This case is the culmination of a long and tortured dispute between two members of a limited liability company (LLC) and presents us with the novel issue of foreclosure on a member's interest under the South Carolina Uniform Limited Liability Company Act.[1] Kriti Ripley, LLC and Emerald Investments, LLC formed Ashley River Properties II, LLC (Ashley River II) for the purpose of developing a parcel of property. Emerald made in-kind contributions for its share in Ashley River II, and Kriti contributed $1.25 million. Immediately, Emerald and its sole member, Stuart Longman (collectively, Respondents), diverted and misappropriated those funds. Upon learning of Emerald and Longman's wrongdoing, Kriti and Ashley River II (collectively, Appellants) procured a judgment against Emerald and Longman, and Emerald was stripped of its voting rights in and management of Ashley River II. Since that time, Emerald and Longman have refused to pay any amount towards the judgment and instead have engaged in a pattern of abusive litigation. Attempting to collect on the judgment, Kriti and Ashley River II obtained a charging order against Emerald's interest and later moved to foreclose on that interest. The circuit court denied the motion for foreclosure, and this appeal followed.

---

1. S.C.Code Ann. §§ 33–44–101–1208 (2006).

We hold the circuit court committed several errors of law in denying the motion to foreclose. Generally, we find the court improperly considered unavailable remedies as weighing against foreclosure and incorrectly characterized the seriousness of foreclosure. Furthermore, the court failed to consider the relevant factor of the likelihood of satisfaction of the judgment through distributions. Accordingly, we reverse and remand for foreclosure on and the sale of Emerald's interest in Ashley River II.

## FACTUAL/PROCEDURAL BACKGROUND

Emerald, a Connecticut LLC managed by Longman, undertook to develop condominiums and a marina on a piece of property in Charleston. The project experienced financial difficulties in 2003, and Emerald turned to Kriti as an outside investor. Kriti is a Delaware LLC of which Davidson Williams is the managing member. Emerald and Kriti entered into an operating agreement under which Emerald became a 70% member and Kriti became a 30% member in Ashley River II. Kriti contributed $1.25 million in capital for its interest, and Emerald contributed the property and permits, together valued at $2.5 million.

The operating agreement states that any dispute arising thereunder is subject to arbitration pursuant to the South Carolina Uniform Arbitration Act.[2] It also provides that any dispute must be submitted to arbitration in New York and that the courts of the state of New York have "sole and exclusive jurisdiction." The agreement prohibits the commingling of Ashley River II's funds with other funds and provides that the LLC cannot make any expenditure outside the approved budget attached to the agreement or future budgets approved by the members. Emerald can default under the agreement by taking specified actions, and the remedies Kriti may elect to exercise when Emerald defaults are the forfeiture of Emerald's voting rights, the termination of the project development agreement, and the purchase of Emerald's membership interest for the price of its unreturned capital contribution. Dissolution is provided only upon the occurrence of one of several specified events. Finally, the

---

2. S.C.Code Ann. §§ 15–48–10–240 (2005 & Supp.2012).

agreement provides that distributions are to be made by a vote of the members and prohibits distributions if they would cause the LLC to not be able to pay its debts or cause its debts to be greater than its assets.

Immediately upon formation of the LLC, Emerald and Longman diverted Kriti's capital contribution to Longman and other entities controlled by Longman, caused Ashley River II to make payments not on approved budgets, and commingled the contribution with other funds unrelated to Ashley River II. One of the wrongful diversions caused Ashley River II to incur an $84,000 penalty due to a delay in paying a vendor. Additionally, Emerald and Longman failed to disclose to Kriti contracts for the purchase of condominium units and marina slips and the bankruptcy of an entity owned by Longman that was involved in the development.

Emerald continued to manage Ashley River II until January 14, 2005, when Kriti, having discovered Emerald and Longman's wrongful conduct, terminated the development agreement and alleged default under the operating agreement. At that point, Kriti took control of Ashley River II. On March 23, 2005, Kriti and Ashley River II brought an arbitration action in New York (the 2005 Arbitration). They contended Emerald defaulted under the operating agreement and sought damages, forfeiture of Emerald's voting rights, forfeiture of Emerald's interest in the LLC, and alternatively, an order permitting Kriti to buy Emerald's interest for its outstanding capital contributions.

Around the same time, Kriti issued a capital call and informed Emerald that to satisfy the capital call, Emerald would first have to pay Ashley River II the funds at issue in the 2005 Arbitration. Emerald refused to provide the requested capital, and Kriti purportedly reduced Emerald's membership interest to 21.3% according to a formula provided in the operating agreement.

Emerald then counterclaimed in the 2005 Arbitration seeking dissolution of Ashley River II on the grounds Kriti engaged in oppressive conduct towards Emerald, including an improper capital call, frustration of a loan extension, encouragement of litigation against Ashley River II, and improperly refusing an offer to purchase the subject property.

On October 31, 2005, the New York arbitration panel issued an award finding Emerald wrongfully diverted, commingled, and mishandled Ashley River II's funds and failed to disclose material information. As a result, the panel found Emerald had forfeited all voting rights in Ashley River II, the development agreement was validly terminated, Kriti and Ashley River II were entitled to an award of $706,225 consisting of indemnification, legal fees, and arbitrator fees,[3] and Kriti had the option to purchase Emerald's interest in Ashley River II by paying Emerald $2.5 million—the amount of its unreturned capital contributions—within 120 days of the award.[4] The panel concluded that forfeiture of Emerald's membership interest in Ashley River II was not an available remedy because Emerald had probable cause to challenge the capital call.[5] However, the arbitrators did not make any factual findings as to the propriety of the capital call, instead limiting their findings to the probable cause of challenging the capital call. Finally, the panel denied Emerald's counterclaim for dissolution.

Emerald and Longman filed suit in the Charleston County Court of Common Pleas seeking to set aside the 2005 Arbitration award and dissolve Ashley River II (the 2005 Dissolution Suit).[6] As the basis for their claims, the plaintiffs asserted Kriti engaged in the oppressive conduct of making the 2005 capital call, obstructing a loan closing, encouraging litigation

3. Specifically, the panel found Kriti and Ashley River II were entitled to $400,000 in indemnification from Emerald and Longman for claims made against Ashley River II by third-party vendors, $251,000 for legal fees and disbursements, and $55,225 for administrative and arbitrator fees.

4. Kriti later attempted to exercise the option to purchase Emerald's interest but was rebuffed, litigation ensued in New York, and the attempt to purchase ultimately failed.

5. The operating agreement provides that "In the event that [Emerald] shall contest any of the foregoing remedies and shall not prevail, then the Emerald Member shall forfeit all of its Membership Shares in the Company, and the Membership Shares in the Company shall be reallocated between or among the remaining Members on a pro-rata basis...."

6. A third plaintiff was Ashley River Properties I, LLC, an entity controlled by Longman that was involved in the development.

against Ashley River II, and declining an offer to purchase the subject property. Kriti and Ashley River II moved to dismiss, and the motion was granted in part and denied in part. The claims to vacate or modify the arbitration award were dismissed on the ground the court lacked jurisdiction because those claims must be brought in New York. The court also dismissed the claim for judicial dissolution, finding that issue had already been decided in the 2005 Arbitration.[7]

Kriti and Ashley River II filed suit in New York (the 2006 Confirmation Suit) for confirmation of the 2005 Arbitration award and an order directing Emerald to transfer its membership interest in Ashley River II to Kriti pursuant to its buyout option under the 2005 Arbitration award. Two days later, Emerald filed suit against Kriti in New York requesting a declaration that Kriti failed to make a proper tender for Emerald's interest in Ashley River II, that Kriti's right to make a tender for Emerald's interest had lapsed, and that Emerald continued to hold a 70% interest in Ashley River II (the 2006 Declaratory Judgment Suit).

In the 2006 Confirmation Suit, the New York court issued an order confirming the arbitration award. The court also denied without prejudice Kriti's request to compel Emerald to transfer its membership interest. On April 29, 2008, Kriti and Ashley River II registered the judgment in the Charleston County Court of Common Pleas. They then brought the instant action for a lien based on that judgment (the Lien Suit). On October 17, 2008, Kriti and Ashley River II perfected a lien on Emerald's distributional interest in Ashley River II through a charging order.

On January 30, 2009, Emerald filed suit in the Charleston County Court of Common Pleas for a determination of its interest in and the dissolution of Ashley River II (the 2009 Dissolution Suit). Specifically, Emerald sought a declaration that it still owned 70% of Ashley River II and dissolution on the ground Kriti had engaged in oppressive conduct. Emerald subsequently filed a demand for arbitration in New York (the 2010 Arbitration), seeking a declaration that Emerald owned 70% of Ashley River II and that Kriti breached the

---

7. The sole remaining claim was Ashley River I's claim for a declaration of its rights under the operating agreement.

operating agreement, breached its fiduciary duty, and engaged in waste. As a remedy, Emerald sought the expulsion of Kriti from Ashley River II and damages, or alternatively, the reinstatement of Emerald's voting rights. As a result and by consent order, the 2009 Dissolution Suit was stayed pending resolution of the arbitration.[8]

A New York arbitration panel issued an award in the 2010 Arbitration finding Emerald had a 70% interest in Ashley River II because "the capital call was defective on its face" in "imposing conditions on the application of Emerald's capital contribution which were contrary to the terms of the operating agreement" and, thus, the capital call was "ineffective to trigger a dilution of Emerald's membership interests." However, the panel did not find that the capital call was unnecessary or made with an intent to dilute Emerald's interest. Other than finding the capital call defective, the panel rejected all of Emerald's claims. It found there was no basis to dissociate or dissolve Ashley River II under the operating agreement, Kriti had neither violated the operating agreement nor engaged in corporate waste, and all of Kriti's actions were within its business judgment. It noted that Emerald's claims and evidence were "at best, the observations of Stuart Longman who believed that he could develop the property better."

On February 1, 2011, Kriti and Ashley River II filed the motion at issue here, seeking to foreclose on Emerald's interest in Ashley River II. Attached in support of the motion were Williams' affidavit and as exhibits thereto, the financial statements for Ashley River II for 2008, 2009, and 2010. Shortly thereafter, a second affidavit by Williams was filed with exhibits consisting of the 2010 Arbitration award, a letter from Kriti's counsel to Emerald's counsel offering to confirm the 2010 Arbitration award by consent, a judgment entered by a New York court against Longman on July 10, 1996, and a complaint filed in a Connecticut court against Longman on September 30, 2010.

---

8. The consent order also dismissed with prejudice the claim for a declaratory judgment as to Emerald's interest based on the parties' agreement to arbitrate that claim. Additionally, the consent order provided that the resulting award in the 2010 Arbitration would be admissible and binding in the 2009 Dissolution Suit.

Williams' first affidavit recounted the procedural history of the case and stated that Kriti and Ashley River II had not recovered anything on their judgment and that it was unlikely Ashley River II would make distributions in the foreseeable future. The financial statements attached showed that from 2008 to 2010, the members' equity decreased each year—from $1,777,586 in 2008 to $1,219,570 in 2009 and to $1,061,470 in 2010. Additionally, each year the company suffered a loss—$899,498 in 2008, $588,016 in 2009, and $157,432 in 2010. Ashley River II has remained a going concern primarily because of loans Kriti and its affiliated entities have made to the company.

In his second affidavit, Williams recounted the 2010 Arbitration award and informed the court of an outstanding judgment against Longman in New York, an attempt by the judgment creditor to collect on that judgment in Connecticut, and three other suits pending against Emerald or Longman in Connecticut. The appended judgment from New York was entered against Longman personally in 1996 for $1,261,546.88 in actual damages and interest and $2,702,500 in punitive damages for fraud in a real estate transaction. Longman had secretly obtained a mortgage in the name of a corporation, concealed the mortgage from the other shareholder, and used the mortgage proceeds for his own purposes. The 2010 judgment creditor filed suit against Longman, Emerald, and other entities associated with Longman in Connecticut seeking to recover on the 2010 judgment. As of the filing of the Connecticut complaint, the judgment creditor had yet to collect any amount towards the judgment, now totaling $9,017,392.30.

In response to the motion to foreclose, Longman filed his own affidavit with exhibits including Ashley River II's operating agreement, the project development agreement, the 2005 Arbitration award, the 2010 Arbitration award, an appraisal of the underlying property, three offers to purchase the property, and a promissory note executed by Ashley River II in 2006 in favor of Bank of America in exchange for a $9 million loan. In his affidavit, Longman noted that in the 2009 Dissolution Suit Emerald sought dissolution based on "Kriti's persistent mismanagement" of Ashley River II and continues to seek

dissolution on that ground. The affidavit also asserted that the financial statements presented by Williams undervalue Ashley River II's real estate holdings, and asserted based on an appended appraisal that the "as is" value for the underlying property is $17.25 million. Longman also stated that Kriti mismanaged Ashley River II by turning down offers to purchase the underlying property, by not selling marina slips as "dockominiums," and by overly indebting the company through the Bank of America loan.

The appraisal submitted by Longman was prepared on behalf of Bank of America as Ashley River II's lender and valued the vacant land "as is" as of September 25, 2009, at $7,720,000. The marina was valued at $9,530,000 if sold as "dockominium" units and $2,340,000 if leased as wet slips.

The first offer to purchase the property was an offer of $14.5 million made by Centex Destination Properties in 2005. However, that offer was for both the property owned by Ashley River II and adjacent property owned by an entity controlled by Longman but in which Kriti had no interest. Kriti declining the offer was raised by Emerald as a ground for relief in the 2010 Arbitration. There, Kriti asserted that it attempted to proceed with the Centex offer, but Emerald refused to agree to place the proceeds in escrow pending a decision in the 2005 Arbitration, and Kriti and Emerald could not agree on an allocation of the proceeds between Ashley River II and the adjacent property owner. The arbitrators found Kriti had not engaged in mismanagement or waste in relation to the offer, but rather properly exercised its business judgment.

Longman also presented a 2007 offer by East Coast Horizons, LLC of $20 million for the property. However, again in the 2010 Arbitration, this issue was raised, Kriti explained that it attempted to accept the offer but the purchaser would not accept the proposed contract, and the arbitrators found there was no mismanagement or waste.

Finally, Longman presented a 2008 offer by Lucorp of $20 million for the property. Again, this issue was raised in the 2010 Arbitration, Kriti explained that Lucorp offered decep-

tive information and lacked proper references, and the arbitrators found Kriti had not engaged in mismanagement or waste.

A hearing was held on the motions pending in both the Lien Suit and the 2009 Dissolution Suit, and the circuit court entered a brief order denying Kriti's motion to foreclose. The order was devoid of factual findings and contained only the following legal analysis:

The Uniform Limited Liability Company Act (LLC Act) grants broad judicial discretion in fashioning remedies in actions by a member of an LLC against the LLC and/or other members. *See Historic Charleston Holdings, LLC v. Mallon*, 381 S.C. 417, 673 S.E.2d 448 (2009). In addition to allowing an order of forced dissolution, the statute empowers a court to grant other relief, including ordering the purchase of the shares of any shareholder, either by the corporation or by other shareholders. *See Hendley v. Lee*, 676 F.Supp. 1317 (D.S.C.1987). Because it is a drastic remedy, foreclosure on a member's distributional interest is discretionary with the Court, not mandatory. *See* S.C.Code Ann. § 33–44–504(b) ("The court may order a foreclosure lien on a distributional interest subject to the charging order.["] )

South Carolina Courts have a long standing [sic] judicial policy to avoid forfeitures. *See National Fire Insurance Company of Hartford v. Brown & Martin Company, Inc.*, 726 F.Supp. 1036 (D.S.C.1989) (citing *Elliott v. Snyder*, 246 S.C. 186, 143 S.E.2d 374 (1965) ("Forfeitures are not favored in law and Courts will seize upon even slight evidence to prevent one.")). *See also South Carolina Tax Commission v. Metropolitan Life Insurance Company*, 266 S.C. 34, 221 S.E.2d 522 (1975) ("both in law and equity forfeitures are abhorred.").

In the present case, foreclosure may not be the appropriate remedy. The previously issued charging order is sufficient to protect the judgment creditors' interests and the debtor has presented evidence that the debt could be satisfied without the necessity of a forced sale of its distributional interest. The Plaintiff's Motion to Foreclose Judgment Lien is denied.

This appeal followed.[9]

## ISSUES PRESENTED

**I.** Is the denial of the motion for foreclosure appealable?

**II.** Did the circuit court err in denying the motion to foreclose?

## LAW/ANALYSIS

### I. APPEALABILITY

Respondents argue the denial of a motion to foreclose on a charging order lien is not immediately appealable and this appeal should therefore be dismissed. We disagree.

■ Generally, only final judgments are appealable, unless a statute provides an exception. *Culbertson v. Clemens*, 322 S.C. 20, 23, 471 S.E.2d 163, 164 (1996). Section 18-9-10 of the South Carolina Code (2012) provides that "an appeal may be taken to the Supreme Court or the court of appeals in the cases mentioned in Sections 14-3-320 and 14-3-330." In turn, Section 14-3-330 of the South Carolina Code (1976) provides in pertinent part:

> The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:
>
> (1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by the original process or removed there from any inferior court or jurisdiction, and final judgments in such action . . .
>
> (2) An order affecting a substantial right in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action . . .

---

9. Subsequently, Kriti had the 2010 Arbitration award confirmed by a New York court. Also, a bench trial was held in the 2009 Dissolution Suit and the circuit court found "no evidence forming a sufficient basis for dissolution" and denied Emerald's request for dissolution.

(3) A final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment . . .

While section 14–3–330 states it applies to "law cases," we have recognized it as applicable in equity cases as well. *See Ex parte Wilson*, 367 S.C. 7, 12 n. 2, 625 S.E.2d 205, 207 n. 2 (2005).

█ The denial of Kriti's motion for foreclosure, while it also likely satisfies other subsections of section 14–3–330, was unquestionably a final judgment. A final judgment is an order that " 'dispose[s] of the cause, . . . reserving no further questions or directions for future determination. It must finally dispose of the whole subject-matter or be a termination of the particular proceedings or action, leaving nothing to be done but to enforce by execution what has been determined.' " *Good v. Hartford Accident & Indem. Co.*, 201 S.C. 32, 41–42, 21 S.E.2d 209, 212 (1942) (quoting 2 Am. Jur. 860 § 22). Here, the only relief requested or available in the action was the issuance of a charging order and foreclosure upon the lien. Once foreclosure was denied, the action was over and nothing was left to be done. Therefore, as a final judgment, the order is immediately appealable.

## II. FORECLOSURE

Appellants argue the circuit court erred in denying its motion for foreclosure by considering other remedies under the LLC Act, construing foreclosure as a drastic remedy, and characterizing foreclosure as a forfeiture. Appellants further contend the court erred in denying foreclosure on the facts of this case. We agree.

Appellants obtained a charging order and sought to foreclose under Section 33–44–504 of the South Carolina Code (2006) which provides:

(a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment. The court may appoint a receiver of the share of the distributions due or to become due to the judgment debtor and make all other orders, directions, accounts, and inquiries the

judgment debtor might have made or which the circumstances may require to give effect to the charging order. (b) A charging order constitutes a lien on the judgment debtor's distributional interest. The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. A purchaser at the foreclosure sale has the rights of a transferee.

. . .

(e) This section provides the exclusive remedy by which a judgment creditor of a member or a transferee may satisfy a judgment out of the judgment debtor's distributional interest in a limited liability company.

■ Foreclosure being an equitable claim, the decision to grant or deny foreclosure under section 33–44–504(b) is equitable. *See Wilder Corp. v. Wilke*, 324 S.C. 570, 576, 479 S.E.2d 510, 513 (Ct.App.1996) ("Actions for foreclosure or the cancellation of instruments are actions in equity."), *aff'd* 330 S.C. 71, 497 S.E.2d 731 (1998). Accordingly, an appellate court reviewing a decision to grant or deny foreclosure under section 33–44–504(b) may find facts in accordance with its own view of the preponderance of the evidence. *See Townes Assocs., Ltd. v. City of Greenville*, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).

## A. Consideration of Other Remedies under the LLC Act

Appellants first contend the circuit court erred by considering other provisions of the LLC Act as providing alternative remedies weighing against foreclosure on the charging order. The court broadly stated that other remedies existed under the LLC Act and specifically mentioned forced dissolution or the compelled purchase of the shares of any shareholder. Those considerations constituted an error of law because the other provisions of the LLC Act were not available remedies, and thus, were irrelevant. Appellants confirmed their judgment, obtained a charging order, and sought foreclosure not as members of an LLC, but as judgment creditors. Their status as judgment creditors did not give them the legal right to seek dissolution or other relief under the LLC Act. Moreover, even considering their status as an LLC and a member of the LLC, respectively, the fact that they were judgment creditors did not give them a right to any remedies under the LLC Act,

other than those provided in section 33–44–504. As that section provides, it is the "exclusive remedy" for a judgment creditor seeking to satisfy a judgment through the debtor's interest in an LLC. In short, there were no other available remedies, and the circuit court's conclusion that the availability of other remedies weighed against ordering foreclosure was an error of law.

### B. Foreclosure as a Drastic Remedy

Appellants also contend the court committed an error of law when it considered foreclosure to be a "drastic remedy." We agree.

Foreclosure is certainly a more drastic remedy than simply charging a member's distributional interest in an LLC. *See 91st St. Joint Venture v. Goldstein,* 114 Md.App. 561, 691 A.2d 272, 283 (1997) (stating that foreclosure on a charging order is a "more drastic method" of recovering on a debt than a charging order). However, generally, foreclosure is not a drastic remedy. It is a remedy commonly used around the country when a charging order on a debtor's interest in an entity alone will not result in payment of a judgment. *See, e.g., Nigri v. Lotz,* 216 Ga.App. 204, 453 S.E.2d 780 (1995); *Fed. Deposit Ins. Corp. v. Birchwood Builders, Inc.,* 240 N.J.Super. 260, 573 A.2d 182 (1990).[10] It is also a remedy routinely used in this state for the satisfaction of debts. Moreover, the statute provides no indication that foreclosure is "drastic" or only to be used in extreme circumstances. A judgment creditor has a right to collect on his judgment, and characterizing the remedy of foreclosure as drastic wrongly implies that in order to foreclose on a charging order a debtor must make some showing beyond the simple necessity of foreclosure.

### C. Foreclosure as Forfeiture

Appellants further contend the circuit court erred as a matter of law when it considered foreclosure to be a form of forfeiture and thus, disfavored. Again, we agree.

---

10. These cases deal with charging orders against partnership interests under the Uniform Limited Partnership Act and Uniform Partnership Law, rather than LLC interests. However, that distinction is immaterial here.

We have defined a forfeiture as "that which is lost, or the right to which is alienated, by a crime, offense, neglect of duty, or breach of contract," and went on to make clear that forfeiture is a "penalty." *Tate v. LeMaster*, 231 S.C. 429, 442, 99 S.E.2d 39, 46 (1957). Similarly, Black's Law Dictionary defines a forfeiture as: "1. The divestiture of property without compensation. 2. The loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty.... 3. Something (esp. money or property) lost or confiscated by this process, a penalty." Black's Law Dictionary 677 (8th ed.1999).

 Foreclosure is not a penalty, but rather is simply the ultimate remedy for collection of a debt owed. Foreclosure on an LLC member's interest does not divest the member of the interest without compensation or cause him to lose his interest. The member simply has a debt that must be paid. Furthermore, the member can avoid the foreclosure by paying the judgment.

### D. Denial of Foreclosure

 Finally, setting aside the circuit court's errors of law, appellants assert the circuit court erred in denying foreclosure. We agree.

As an equitable matter, the decision whether to grant foreclosure under section 33–44–504 requires consideration of the totality of the circumstances in each individual case. *See, e.g., Carroll v. Page*, 264 S.C. 345, 349, 215 S.E.2d 203, 205 (1975) (holding that in "an action in equity ... 'the equities of both sides are to be considered, and each case must be decided on its own particular facts.'" (quoting 30 C.J.S. *Equity* § 89)). However, the primary, and usually determinative, factor for a circuit court to consider is whether the judgment will be paid within a reasonable amount of time through distributions. *See Nigri*, 453 S.E.2d at 783 ("[T]he further step of ordering a sale may be considered appropriate where it is apparent that distributions under the charging order will not pay the judgment debt within a reasonable period of time."); *Birchwood Builders*, 573 A.2d at 185 ("If the court is convinced the creditor's claim will not be satisfied in a reasonably expedient manner by diverting the debtor's income from the partnership

to satisfy the debt, then sale should be ordered."). In short, if a judgment will not be paid through distributions in the reasonably foreseeable future, then foreclosure usually should be ordered.

Here, the circuit court failed to make any findings as to whether the judgment would be satisfied in the foreseeable future through distributions, and therefore, erred in denying foreclosure. Moreover, had the circuit court considered whether the judgment would be satisfied through distributions, it could only have found that distributions would not be made in the foreseeable future. At the time the motion to foreclose was denied, the charging order had been in existence for two years and eight months and had yielded no funds towards satisfaction of the judgment. The *only* evidence presented as to Ashley River II's financial health were the financial statements for 2008, 2009, and 2010.[11] Those statements showed the equity in the company was shrinking each year as the liabilities steadily grew. The company only remains able to pay its debts due to loans made by Kriti and affiliated entities. In that situation and without a capital infusion, distributions not only would not be expected, they would not be permissible under the operating agreement. Furthermore, Kriti can hardly be expected to make a capital contribution when Emerald continues to impede the company's business at every turn. Finally, we find no evidence that Kriti has managed the company so as to avoid making distributions.

Rather than considering the availability of distributions, the circuit court found the "charging order is sufficient to protect the judgment creditors' interests and the debtor has presented evidence that the debt could be satisfied without the necessity of a forced sale of its distributional interest." This seems to indicate the court believed the judgment could be paid through the sale of the property and resulting distributions or through dissolution. However, in part for reasons already stated, those considerations are improper. Kriti and Ashley River II bear no obligation to forego what they believe to be a potentially profitable business venture in order to aid

---

11. While Longman presented evidence—the Bank of America appraisals—challenging the property values contained in those financial statements, the appraisals are irrelevant to whether the company was losing money and unable to make distributions.

Emerald and Longman in paying their debt. If Kriti and Ashley River II believe the development of the property can still be made to turn a profit, they are free to pursue that goal.

While Emerald and Longman have protested for years, not only in this litigation but also in collateral litigation, that Kriti has acted inequitably and this weighs against ordering foreclosure, we find the opposite to be true. Emerald and Longman have attempted to game the system in order to avoid any consequences for their wrongful acts while at the same time trying to make a profit at Kriti and Ashley River II's expense. On the other hand, throughout the events underlying this case, Kriti has repeatedly been found to have acted appropriately. Most notably, in the 2010 Arbitration, Emerald and Longman presented all of the allegations of wrongful conduct by Kriti that they present here, and the arbitrators denied their claims finding that Kriti had consistently acted within its business judgment. Again, in Emerald and Longman's most recent attempt, the 2009 Dissolution Suit, the court found that Kriti had not engaged in any misconduct. Additionally, Kriti tried to give Emerald a way out of Ashley River II without the loss of any of its capital contribution by offering to purchase Emerald's interest pursuant to the 2005 Arbitration award, but Emerald refused. Also, it bears repeating that Emerald and Longman find themselves in this position because of their wrongful acts. In conclusion, contrary to Emerald and Longman's assertions, to the extent the parties' conduct is relevant to the decision whether to grant foreclosure, we find it weighs against Emerald and Longman.

## CONCLUSION

For those reasons, we hold the circuit court erred in denying the motion for foreclosure. Accordingly, we reverse and remand for the foreclosure on and sale of Emerald's interest in Ashley River II through the normal foreclosure process and without further delay.

TOAL, C.J., BEATTY and KITTREDGE, JJ., concur.

PLEICONES, J, concurring in result only.