# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Shaul Levy and Meir Levy, Appellants,

v.

Carolinian, LLC, Respondent.

Appellate Case No. 2013-000650

————————

Appeal from Horry County
Steven H. John, Circuit Court Judge

————————

Opinion No. 27442
Heard June 25, 2014 – Filed September 3, 2014

————————

## REVERSED

————————

R. Wayne Byrd, Mark B. Goddard, and Carlyle Cromer,
all of Turner Padget Graham & Laney, P.A., of Myrtle
Beach; and R. Hawthorne Barrett of Turner Padget
Graham & Laney, P.A., of Columbia, for Appellants.

Benjamin A. Baroody, of Bellamy, Rutenberg, Copeland,
Epps, Gravely & Bowers, P.A. of Myrtle Beach, for
Respondent.

————————

**JUSTICE KITTREDGE:**  This case is about the efforts of Respondent
Carolinian, LLC (Carolinian) to acquire the distributional interest of Bhupendra
Patel (Patel), a member of Carolinian, from judgment creditors, Appellants Shaul

and Meir Levy (collectively "Levys"), who purchased Patel's distributional interest at a foreclosure sale. The circuit court found that, pursuant to Carolinian's Operating Agreement, Carolinian could compel the Levys to sell their distributional interest after the foreclosure sale. We reverse.

## I.

Carolinian is a closely held, manager-managed limited liability company (LLC), which is organized under the laws of South Carolina and which owns and manages various hotel and rental properties in Horry County, South Carolina. In February 2010, the Levys obtained a judgment against Patel[1] in the amount of $2.5 million. Thereafter, the Levys obtained a charging order in the circuit court, which constituted a lien against Patel's distributional interest in Carolinian.

Subsequently, the Levys filed a petition to foreclose the charging lien, and the foreclosure sale was held in April 2012. The Levys were the successful bidders, purchasing Patel's distributional interest for $215,000. Carolinian was represented at the foreclosure sale by its registered agent and its attorney, who unsuccessfully bid $190,000 on Carolinian's behalf.

Regarding the right to redeem or disencumber a member's distributional interest, Section 3.5 of Carolinian's Operating Agreement provides that a member's financial rights can be redeemed at any time up until foreclosure sale:

> Redemption of Member's Financial Rights Subjected to Charging Order. In the event a Member's Financial Rights are subjected to a charging order under Section 33-44-504 of the [South Carolina Code], the Management Committee may cause the Company to redeem the Member's Financial Rights so charged, with Company Property, *at any time prior to foreclosure of said Financial Rights* in accordance with Section 33-44-504(c) of the [South Carolina Code].

---

[1] Patel and two other persons are jointly and severally liable to the Levys for the judgment debt. However, because the two others are not involved in this lawsuit, we refer to Patel as the sole judgment debtor for ease of reference.

(emphasis added).  It is undisputed neither Carolinian nor any of the remaining members redeemed Patel's interest prior to the foreclosure sale, and the Levys did not thereafter seek to be admitted as members of Carolinian.

Regarding a judgment creditor's acquisition of a member's distributional interest, Carolinian's Operating Agreement provides:

> [N]o creditor of a Member who obtains any portion of a Membership Share, including any Financial Rights, by charging order pursuant to Section 33-44-504 of the [South Carolina Code] . . . may become a full Member in the Company *without the unanimous written consent of the Members*, *obtained after the transfer*.  . . . If the transferee of all or any part of a Member's Membership Share is not admitted as a Member, he shall be entitled to receive only the distributions to which the transferor would otherwise be entitled.  *The transferee shall not have any Voting Rights and shall not be entitled to participate in the management of the Company or to exercise any rights of a Member.*

(emphasis added).

Following the foreclosure sale, Carolinian asserted it was entitled to purchase Patel's distributional interest from the Levys pursuant to Article 11 of the Operating Agreement.  Article 11 of the Operating Agreement, which speaks to the rights of a "member" to transfer his membership share, provides in relevant part:

> 11.1   Restrictions on Transfer.  No Member may voluntarily or involuntarily sell, transfer, gift, assign, pledge, mortgage, hypothecate, or otherwise convey or encumber any portion or all of his Membership Share to any Person without the prior written consent of those Members who own more than sixty-seven (67%) percent of the Voting Rights in the Company (without regard to the transferor Member).  If [no] such consent is obtained, . . . any attempted conveyance or encumbrance of all or a portion of a Membership Share in contravention of this ARTICLE XI shall be null, void and without effect.

11.2   Right to Buy

. . . .

(b)   Company and Members Right to Buy.  If a Member attempts to transfer all or a portion of his Membership Share without obtaining the other Members' consent as required in SECTION 11.1, . . . such Member is deemed to have offered to the Company all of his Member Share . . . .

Carolinian contended that, since the Levys failed to obtain the consent required under Section 11.1 of the Operating Agreement, their distributional interest was deemed to have been offered to Carolinian, and Carolinian was entitled to purchase that interest under Section 11.2.

The Levys objected to Carolinian's attempt to force them to sell their interest, arguing they were not subject to the terms of Article 11 of the Operating Agreement and, thus, were not required to seek consent thereunder.  The Levys subsequently filed suit, seeking a declaratory judgment that they were the lawful owners of Patel's distributional interest and that any right Carolinian had to compel the sale of the distributional interest terminated upon the foreclosure sale under the terms of Section 3.5 of the Operating Agreement.

Following a hearing, the trial court found the foreclosure sale, which resulted in the transfer of Patel's distributional interest in Carolinian to the Levys, changed the Levys' status from that of mere judgment creditors to transferees of Patel's distributional interest.  The trial court further found that, as transferees, the Levys became subject to the provisions of Article 11 of the Operating Agreement.  Specifically, the trial court held that Carolinian could force the Levys to sell Patel's distributional interest pursuant to Sections 11.1 and 11.2 of the Operating Agreement.

The Levys' appeal was certified to this Court pursuant to Rule 204(b), SCACR.

## II.

The dispositive issue in this case is whether Carolinian may compel the Levys to sell the distributional interest they acquired through the foreclosure sale.  The Levys admit Carolinian had the right to redeem Patel's distributional interest at any time *prior to* the foreclosure sale; however, the Levys contend the ability to redeem that interest was extinguished by virtue of the judicial sale.  Thus, the Levys argue the circuit court committed an error of law in finding that, pursuant to Article 11 of the Operating Agreement, Carolinian may compel the Levys to sell their distributional interest.  We agree.

The South Carolina Uniform Limited Liability Company Act of 1996 ("LLC Act")[2] provides the *exclusive remedy* by which a judgment creditor of a member may satisfy a judgment out of the judgment debtor's distributional interest in an LLC.  S.C. Code Ann. § 33-44-504(e) (2006 & Supp. 2013); *see also Kriti Ripley, LLC v. Emerald Invs., LLC*, 404 S.C. 367, 381, 746 S.E.2d 26, 33 (2013) (finding the exclusive remedy for a judgment creditor seeking to satisfy a judgment through the debtor's interest in an LLC is the process set forth in S.C. Code Ann. section 33-44-504).

The LLC Act provides in relevant part:

> (a) On application by a judgment creditor of a member of a limited liability company or of a member's transferee, a court having jurisdiction may charge the distributional interest of the judgment debtor to satisfy the judgment.  . . . .

> (b) A charging order constitutes a lien on the judgment debtor's distributional interest.  The court may order a foreclosure of a lien on a distributional interest subject to the charging order at any time. *A purchaser at the foreclosure sale has the rights of a transferee*.

---

[2] S.C. Code Ann. §§ 33-44-101 to -1208 (2006 & Supp. 2013).

S.C. Code Ann. § 33-44-504 (emphasis added). In terms of disencumbering a member's interest that is subject to a charging lien, consistent with Section 3.5 of Carolinian's Operating Agreement, the LLC Act provides that a member's distributional interest in an LLC may be redeemed at any time *prior to foreclosure*. *Id.* § 33-44-504(c).

The LLC Act defines a member's distributional interest as "all of a member's interest in distributions by the [LLC]." *Id.* § 33-44-101(6). A distributional interest in an LLC is personal property and may be transferred in whole or in part. *Id*. § 33-44-501(b). A distributional interest does not include the member's broader rights to participate in management of the LLC. *Id*. § 33-44-501 cmt. "A transfer entitles the transferee to receive, to the extent transferred, only the distributions to which the transferor would be entitled." *Id*. § 33-44-502.

"A transfer of a distributional interest does not entitle the transferee to become or to exercise any rights of a member." *Id*. A transferee may become a member of the LLC if and only to the extent all other members consent or as otherwise set forth in the LLC operating agreement. *Id.* § 33-44-503(a). The operating agreement is the essential contract that governs the affairs of an LLC. *Id*. § 33-44-103 cmt. Although an LLC is generally free to modify the default provisions of the LLC Act by its operating agreement, an LLC may not "restrict [the] rights of a person, other than a manager, member, and transferee of a member's distributional interest" through the terms of its operating agreement. *Id*. § 33-44-103(b) (enumerating various non-waivable provisions of the LLC Act).

We find the trial court committed an error of law in finding the provisions of Article 11 of the Operating Agreement applied and restricted the Levys right to foreclose their charging lien without the consent of Carolinian or its members. First, the transfer restrictions of Section 11.1, by their express and unambiguous terms, apply only to "members," and unquestionably, the Levys have never been or sought to be members of Carolinian; they merely became transferees of Patel's distributional interest by virtue of the foreclosure sale. *See Schulmeyer v. State Farm Fire & Cas. Co.*, 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003) (noting courts are bound to give effect to the meaning of an agreement's terms, which are to be taken and understood in their plain, ordinary, and popular sense (citing *C.A.N. Enters., Inc. v. S.C. Health & Human Servs. Fin. Comm'n*, 296 S.C. 373, 377, 373 S.E.2d 584, 586 (1988))). Further, the Levys did not attain the status of transferees until *after the foreclosure sale*; thus, Carolinian could not, through its

Operating Agreement, restrict the statutory rights of the Levys by requiring consent from Carolinian or its members *before the foreclosure sale*, as the Levys were mere judgment creditors at that time. *See* S.C. Code Ann. § 33-44-103(b)(7) (prohibiting an operating agreement from restricting the rights of a person other than managers, members, and transferees of a member's distributional interest). Thus, the Levys were not subject to the transfer restrictions of Section 11.1 at the time they foreclosed their charging lien.

Moreover, because the Levys were not required under Section 11.1 to obtain consent from Carolinian or its members prior to the foreclosure sale, we find Carolinian may not now invoke the right to purchase under Section 11.2, as that section, by its terms, applies only where consent under Section 11.1 is required and not obtained prior to the transfer. We hold that Carolinian's ability to purchase Patel's interest is not controlled by any part of Article 11, but rather by Section 3.5 of the Operating Agreement, which provided Carolinian the opportunity to purchase Patel's interest *before* the foreclosure sale, not after.[3] From the record, it appears Carolinian was simply unwilling or unable to pay the amount necessary to redeem Patel's distributional interest prior to the foreclosure sale; however, neither the law nor the Operating Agreement gives Carolinian the unilateral right, following the foreclosure sale, to purchase the distributional interest the Levys lawfully acquired in an effort to satisfy their judgment against Patel. *See Kriti Ripley*, 404 S.C. at 381–82, 746 S.E.2d at 33–34 ("A judgment creditor has a right to collect on his judgment . . . . Foreclosure is not a penalty, but rather is simply the ultimate remedy for collection of a debt owed. Foreclosure on an LLC member's interest does not divest the member of the interest without compensation or cause him to lose his interest. The member simply has a debt that must be paid.").

## III.

We reverse the trial court and find that the provisions of Article 11 of the Operating Agreement did not restrict the Levys' right to foreclose their charging

---

[3] We note Carolinian also had the opportunity to obtain Patel's interest through the foreclosure sale; this opportunity was limited only by Carolinian's decision to cap the amount of its bid at $190,000.

lien against Patel's distributional interest, and we further find that Carolinian may not now invoke the provisions of Article 11 to compel the Levys to sell the distributional interest they acquired through the foreclosure sale.

**REVERSED.**

**TOAL, C.J., PLEICONES, BEATTY and HEARN, JJ., concur.**